## BOUSLEY *v.* UNITED STATES

No. 96–8516.   Argued March 3, 1998—Decided May 18, 1998

REHNQUIST, C. J., delivered the opinion of the Court, in which O'CON-NOR, KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined. STEVENS, J., filed an opinion concurring in part and dissenting in part, *post,* p. 625. SCALIA, J., filed a dissenting opinion, in which THOMAS, J., joined, *post,* p. 629.

*L. Marshall Smith,* by appointment of the Court, 522 U. S. 946, argued the cause and filed briefs for petitioner.

*Deputy Solicitor General Dreeben* argued the cause for the United States. With him on the briefs were *Solici-*

tor *General Waxman*, Acting Assistant Attorney General *Keeney*, *Roy W. McLeese III*, and *Vicki S. Marani*.

*Thomas C. Walsh*, by invitation of the Court, 522 U. S. 990, argued the cause as *amicus curiae* urging affirmance. With him on the brief was *Brian C. Walsh*.*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

Petitioner pleaded guilty to "using" a firearm in violation of 18 U. S. C. § 924(c)(1) in 1990. Five years later we held in *Bailey* v. *United States*, 516 U. S. 137, 144 (1995), that § 924(c)(1)'s "use" prong requires the Government to show "active employment of the firearm." Petitioner meanwhile had sought collateral relief under 28 U. S. C. § 2255, claiming that his guilty plea was not knowing and intelligent because he was misinformed by the District Court as to the nature of the charged crime. We hold that, although this claim was procedurally defaulted, petitioner may be entitled to a hearing on the merits of it if he makes the necessary showing to relieve the default.

Following his arrest in March 1990, petitioner was charged with possession of methamphetamine with intent to distribute, in violation of 21 U. S. C. § 841(a)(1). A superseding indictment added the charge that he "knowingly and intentionally used . . . firearms during and in relation to a drug trafficking crime," in violation of 18 U. S. C. § 924(c). App. 5–6. Petitioner agreed to plead guilty to both charges while reserving the right to challenge the quantity of drugs used in calculating his sentence. *Id.*, at 10–12.

The District Court accepted petitioner's pleas, finding that he was "competent to enter [the] pleas, that [they were] voluntarily entered, and that there [was] a factual basis for

---

*Briefs of *amici curiae* urging reversal were filed for the American Civil Liberties Union by *Larry W. Yackle* and *Steven R. Shapiro;* and for the National Association of Criminal Defense Lawyers et al. by *Bonnie I. Robin-Vergeer*, *David M. Porter*, and *Kyle O'Dowd.*

them." *Id.,* at 29–30. Following a sentencing hearing, the District Court sentenced petitioner to 78 months' imprisonment on the drug count, a consecutive term of 60 months' imprisonment on the § 924(c) count, and four years of supervised release. *Id.,* at 83–84. Petitioner appealed his sentence, but did not challenge the validity of his plea. The Court of Appeals affirmed. 950 F. 2d 727 (CA8 1991).

In June 1994, petitioner sought a writ of habeas corpus under 28 U. S. C. § 2241, challenging the factual basis for his guilty plea on the ground that neither the "evidence" nor the "plea allocution" showed a "connection between the firearms in the bedroom of the house, and the garage, where the drug trafficking occurred." App. 109. A Magistrate Judge recommended that the petition be treated as a motion under 28 U. S. C. § 2255 and recommended dismissal, concluding that there was a factual basis for petitioner's guilty plea because the guns in petitioner's bedroom were in close proximity to drugs and were readily accessible. App. 148–153. The District Court adopted the Magistrate Judge's Report and Recommendation and ordered that the petition be dismissed. *Id.,* at 154–155.

Petitioner appealed. While his appeal was pending, we held in *Bailey* that a conviction for use of a firearm under § 924(c)(1) requires the Government to show "active employment of the firearm." 516 U. S., at 144. As we explained, active employment includes uses such as "brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire" the weapon, *id.,* at 148, but does not include mere possession of a firearm, *id.,* at 143. Thus, a "defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds," or for "placement of a firearm to provide a sense of security or to embolden." *Id.,* at 149.

Following our decision in *Bailey,* the Court of Appeals appointed counsel to represent petitioner. Counsel argued that *Bailey* should be applied "retroactively," that petition-

er's guilty plea was involuntary because he was misinformed about the elements of a § 924(c)(1) offense, that this claim was not waived by his guilty plea, and that his conviction should therefore be vacated. Nevertheless, the Court of Appeals affirmed the District Court's order of dismissal. *Bousley* v. *Brooks,* 97 F. 3d 284 (CA8 1996).

We then granted certiorari, 521 U. S. 1152 (1997), to resolve a split among the Circuits over the permissibility of post-*Bailey* collateral attacks on § 924(c)(1) convictions obtained pursuant to guilty pleas.[1] Because the Government disagreed with the Court of Appeals' analysis, we appointed *amicus curiae* to brief and argue the case in support of the judgment below. 522 U. S. 990 (1997).

A plea of guilty is constitutionally valid only to the extent it is "voluntary" and "intelligent." *Brady* v. *United States,* 397 U. S. 742, 748 (1970). We have long held that a plea does not qualify as intelligent unless a criminal defendant first receives "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Smith* v. *O'Grady,* 312 U. S. 329, 334 (1941). *Amicus* contends that petitioner's plea was intelligently made because, prior to pleading guilty, he was provided with a copy of his indictment, which charged him with "using" a firearm. Such circumstances, standing alone, give rise to a presumption that the defendant was informed of the nature of the charge against him. *Henderson* v. *Morgan,* 426 U. S. 637, 647 (1976); *id.,* at 650 (White, J., concurring). Petitioner nonetheless maintains that his guilty plea was unintelligent because the District Court subsequently misinformed him as to the elements of a § 924(c)(1) offense. In other words, petitioner contends that the record reveals that neither he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged. Were

---

[1] See *United States* v. *Carter,* 117 F. 3d 262 (CA5 1997); *Lee* v. *United States,* 113 F. 3d 73 (CA7 1997); *United States* v. *Barnhardt,* 93 F. 3d 706 (CA10 1996); *In re Hanserd,* 123 F. 3d 922 (CA6 1997).

this contention proved, petitioner's plea would be, contrary to the view expressed by the Court of Appeals, constitutionally invalid.

Our decisions in *Brady* v. *United States, supra, McMann* v. *Richardson*, 397 U. S. 759 (1970), and *Parker* v. *North Carolina*, 397 U. S. 790 (1970), relied upon by *amicus*, are not to the contrary. Each of those cases involved a criminal defendant who pleaded guilty after being correctly informed as to the essential nature of the charge against him. See *Brady, supra*, at 756; *McMann, supra*, at 767; *Parker, supra*, at 792. Those defendants later attempted to challenge their guilty pleas when it became evident that they had misjudged the strength of the Government's case or the penalties to which they were subject. For example, Brady, who pleaded guilty to kidnaping, maintained that his plea was neither voluntary nor intelligent because it was induced by a death penalty provision later held unconstitutional. 397 U. S., at 744. We rejected Brady's voluntariness argument, explaining that a "plea of guilty entered by one fully aware of the direct consequences" of the plea is voluntary in a constitutional sense "unless induced by threats . . . , misrepresentation . . . , or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business." *Id.*, at 755 (internal quotation marks omitted). We further held that Brady's plea was intelligent because, although later judicial decisions indicated that at the time of his plea he "did not correctly assess every relevant factor entering into his decision," *id.*, at 757, he was advised by competent counsel, was in control of his mental faculties, and "was made aware of the nature of the charge against him," *id.*, at 756. In this case, by contrast, petitioner asserts that he was misinformed as to the true nature of the charge against him.

*Amicus* urges us to apply the rule of *Teague* v. *Lane*, 489 U. S. 288 (1989), to petitioner's claim that his plea was not knowing and intelligent. In *Teague*, we held that "new constitutional rules of criminal procedure will not be applicable

to those cases which have become final before the new rules are announced," *id.*, at 310, unless the new rule "places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe,'" *id.*, at 311 (quoting *Mackey* v. *United States*, 401 U. S. 667, 692 (1971) (Harlan, J., concurring in part and dissenting in part)), or could be considered a "watershed rul[e] of criminal procedure," 489 U. S., at 311. But we do not believe that *Teague* governs this case. The only constitutional claim made here is that petitioner's guilty plea 'was not knowing and intelligent. There is surely nothing new about this principle, enumerated as long ago as *Smith* v. *O'Grady*, *supra*. And because *Teague* by its terms applies only to procedural rules, we think it is inapplicable to the situation in which this Court decides the meaning of a criminal statute enacted by Congress.

This distinction between substance and procedure is an important one in the habeas context. The *Teague* doctrine is founded on the notion that one of the "principal functions of habeas corpus [is] 'to assure that no man has been incarcerated under a procedure which creates an impermissibly large risk that the innocent will be convicted.'" 489 U. S., at 312 (quoting *Desist* v. *United States*, 394 U. S. 244, 262 (1969)). Consequently, unless a new rule of criminal procedure is of such a nature that "without [it] the likelihood of an accurate conviction is seriously diminished," 489 U. S., at 313, there is no reason to apply the rule retroactively on habeas review. By contrast, decisions of this Court holding that a substantive federal criminal statute does not reach certain conduct, like decisions placing conduct " 'beyond the power of the criminal law-making authority to proscribe,'" *id.*, at 311 (quoting *Mackey, supra*, at 692), necessarily carry a significant risk that a defendant stands convicted of "an act that the law does not make criminal." *Davis* v. *United States*, 417 U. S. 333, 346 (1974). For under our federal system it is

only Congress, and not the courts, which can make conduct criminal. *United States* v. *Lanier,* 520 U. S. 259, 267–268, n. 6 (1997); *United States* v. *Hudson,* 7 Cranch 32 (1812). Accordingly, it would be inconsistent with the doctrinal underpinnings of habeas review to preclude petitioner from relying on our decision in *Bailey* in support of his claim that his guilty plea was constitutionally invalid.

Though petitioner's claim is not *Teague*-barred, there are nonetheless significant procedural hurdles to its consideration on the merits. We have strictly limited the circumstances under which a guilty plea may be attacked on collateral review. "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry* v. *Johnson,* 467 U. S. 504, 508 (1984) (footnote omitted). And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. Habeas review is an extraordinary remedy and "'will not be allowed to do service for an appeal.'" *Reed* v. *Farley,* 512 U. S. 339, 354 (1994) (quoting *Sunal* v. *Large,* 332 U. S. 174, 178 (1947)). Indeed, "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *United States* v. *Timmreck,* 441 U. S. 780, 784 (1979). In this case, petitioner contested his sentence on appeal, but did not challenge the validity of his plea. In failing to do so, petitioner procedurally defaulted the claim he now presses on us.

In an effort to avoid this conclusion, petitioner contends that his claim falls within an exception to the procedural default rule for claims that could not be presented without further factual development. Brief for Petitioner 28–34. In *Waley* v. *Johnston,* 316 U. S. 101 (1942) *(per curiam),* we held that there was such an exception for a claim that a plea of guilty had been coerced by threats made by a Government

agent, when the facts were "dehors the record and their effect on the judgment was not open to consideration and review on appeal." *Id.*, at 104. Petitioner's claim, however, differs significantly from that advanced in *Waley.* He is not arguing that his guilty plea was involuntary because it was coerced, but rather that it was not intelligent because the information provided him by the District Court at his plea colloquy was erroneous. This type of claim can be fully and completely addressed on direct review based on the record created at the plea colloquy.

Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice," *Murray* v. *Carrier*, 477 U. S. 478, 485 (1986); *Wainwright* v. *Sykes*, 433 U. S. 72, 87 (1977), or that he is "actually innocent," *Murray, supra*, at 496; *Smith* v. *Murray*, 477 U. S. 527, 537 (1986).

Petitioner offers two explanations for his default in an attempt to demonstrate cause. First, he argues that "the legal basis for his claim was not reasonably available to counsel" at the time his plea was entered. Brief for Petitioner 35. This argument is without merit. While we have held that a claim that "is so novel that its legal basis is not reasonably available to counsel" may constitute cause for a procedural default, *Reed* v. *Ross*, 468 U. S. 1, 16 (1984), petitioner's claim does not qualify as such. The argument that it was error for the District Court to misinform petitioner as to the statutory elements of § 924(c)(1) was most surely not a novel one. See *Henderson*, 426 U. S., at 645–646. Indeed, at the time of petitioner's plea, the Federal Reporters were replete with cases involving challenges to the notion that "use" is synonymous with mere "possession." See, *e. g., United States* v. *Cooper*, 942 F. 2d 1200, 1206 (CA7 1991) (appeal from plea of guilty to "use" of a firearm in violation of

§ 924(c)(1)), cert. denied, 503 U. S. 923 (1992).[2] Petitioner also contends that his default should be excused because, "before *Bailey*, any attempt to attack [his] guilty plea would have been futile." Brief for Petitioner 35. This argument, too, is unavailing. As we clearly stated in *Engle* v. *Isaac*, 456 U. S. 107 (1982), "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Id.*, at 130, n. 35. Therefore, petitioner is unable to establish cause for his default.

Petitioner's claim may still be reviewed in this collateral proceeding if he can establish that the constitutional error in his plea colloquy "has probably resulted in the conviction of one who is actually innocent." *Murray* v. *Carrier, supra,* at 496. To establish actual innocence, petitioner must demonstrate that, "'in light of all the evidence,'" "it is more likely than not that no reasonable juror would have convicted him." *Schlup* v. *Delo*, 513 U. S. 298, 327–328 (1995) (quoting Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142, 160 (1970)). The District Court failed to address petitioner's actual innocence, perhaps because petitioner failed to raise it initially in his § 2255 motion. However, the Government does not contend that petitioner waived this claim by failing to raise it below. Accordingly, we believe it appropriate to remand this case to permit petitioner to attempt to make a showing of actual innocence.

It is important to note in this regard that "actual innocence" means factual innocence, not mere legal insufficiency.

---

[2] Even were we to conclude that petitioner's counsel was unaware at the time that petitioner's plea colloquy was constitutionally deficient, "[w]here the basis of a . . . claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default." *Engle* v. *Isaac*, 456 U. S. 107, 134 (1982).

See *Sawyer* v. *Whitley*, 505 U. S. 333, 339 (1992). In other words, the Government is not limited to the existing record to rebut any showing that petitioner might make. Rather, on remand, the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy and would not normally have been offered before our decision in *Bailey*.[3] In cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges.

In this case, the Government maintains that petitioner must demonstrate that he is actually innocent of both "using" and "carrying" a firearm in violation of § 924(c)(1). But petitioner's indictment charged him only with "using" firearms in violation of § 924(c)(1). App. 5–6. And there is no record evidence that the Government elected *not to* charge petitioner with "carrying" a firearm in exchange for his plea of guilty. Accordingly, petitioner need demonstrate no more than that he did not "use" a firearm as that term is defined in *Bailey*.

If, on remand, petitioner can make that showing, he will then be entitled to have his defaulted claim of an unintelligent plea considered on its merits. The judgment of the Court of Appeals is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

[3] JUSTICE SCALIA contends that this factual innocence inquiry will be unduly complicated by the absence of a trial transcript in the guilty plea context. *Post,* at 631 (dissenting opinion). We think his concerns are overstated. In the federal system, where this case arose, guilty pleas must be accompanied by proffers, recorded verbatim on the record, demonstrating a factual basis for the plea. See Fed. Rules Crim. Proc. 11(f), (g).

JUSTICE STEVENS, concurring in part and dissenting in part.

While I agree with the Court's central holding and with its conclusion that none of its judge-made rules foreclose petitioner's collateral attack on his conviction under 18 U. S. C. § 924(c), I believe there is a flaw in its analysis that will affect the proceedings on remand. Given the fact that the record now establishes that the plea of guilty to the § 924(c) charge was constitutionally invalid, petitioner remains presumptively innocent of that offense. Accordingly, unless he again pleads guilty, the burden is on the Government to prove his unlawful use of a firearm.

I

This case does not raise any question concerning the possible retroactive application of a new rule of law, cf. *Teague* v. *Lane*, 489 U. S. 288 (1989), because our decision in *Bailey* v. *United States*, 516 U. S. 137 (1995), did not change the law. It merely explained what § 924(c) had meant ever since the statute was enacted. The fact that a number of Courts of Appeals had construed the statute differently is of no greater legal significance than the fact that 42 U. S. C. § 1981 had been consistently misconstrued prior to our decision in *Patterson* v. *McLean Credit Union*, 491 U. S. 164 (1989). Our comment on the significance of the pre-*Patterson* jurisprudence applies equally to the pre-*Bailey* cases construing § 924(c):

> "*Patterson* did not overrule any prior decision of this Court; rather, it held and therefore established that the prior decisions of the Courts of Appeals which read § 1981 to cover discriminatory contract termination were *incorrect*. They were not wrong according to some abstract standard of interpretive validity, but by the rules that necessarily govern our hierarchical federal court system. Cf. *Brown* v. *Allen*, 344 U. S. 443, 540 (1953)

(Jackson, J., concurring in result). It is this Court's responsibility to say what a statute means, and once the Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law. A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers* v. *Roadway Express, Inc.*, 511 U. S. 298, 312–313 (1994).

Thus in 1990 when petitioner was advised by the trial judge, by his own lawyer, and by the prosecutor that mere possession of a firearm would support a conviction under § 924(c), he received critically incorrect legal advice. The fact that all of his advisers acted in good-faith reliance on existing precedent does not mitigate the impact of that erroneous advice. Its consequences for petitioner were just as severe, and just as unfair, as if the court and counsel had knowingly conspired to deceive him in order to induce him to plead guilty to a crime that he did not commit. Our cases make it perfectly clear that a guilty plea based on such misinformation is constitutionally invalid. *Smith* v. *O'Grady*, 312 U. S. 329, 334 (1941); *Henderson* v. *Morgan*, 426 U. S. 637, 644–645 (1976). Petitioner's conviction and punishment on the § 924(c) charge "are for an act that the law does not make criminal. There can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'present[s] exceptional circumstances' that justify collateral relief under [28 U. S. C.] § 2255." *Davis* v. *United States*, 417 U. S. 333, 346–347 (1974).

## II

The Government charges petitioner with "procedural default" because he did not challenge his guilty plea on direct appeal. The Court accepts this argument and therefore places the burden on petitioner to demonstrate either "cause

and prejudice" or "actual innocence." See *ante*, at 622. Yet the Court cites no authority for its conclusion that "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Ante*, at 621.[1] Moreover, the primary case upon which the Government relies, *United States* v. *Timmreck*, 441 U. S. 780 (1979), actually supports the contrary proposition: that a constitutionally invalid guilty plea may be set aside on collateral attack whether or not it was challenged on appeal.

Several years before we decided *Timmreck*, the Court had held that it is reversible error for a trial judge to accept a guilty plea without following the procedures dictated by Rule 11 of the Federal Rules of Criminal Procedure. *McCarthy* v. *United States*, 394 U. S. 459 (1969). The question in *Timmreck* was whether such an error was sufficiently serious to support a collateral attack under 28 U. S. C. § 2255. Because the error was neither jurisdictional nor constitutional, we held that collateral relief was unavailable. If we had thought that the failure to challenge the constitutionality of a guilty plea on direct appeal amounted to procedural default, there would have been no need in *Timmreck* to rely on the critical difference between reversible error and the more fundamental kind of error that can be corrected on collateral review. The opinion makes it clear that an ordinary Rule 11 violation must be challenged on appeal; the only cri-

---

[1] The Court does cite *Reed* v. *Farley*, 512 U. S. 339, 354 (1994), for the general proposition that habeas review "'will not be allowed to do service for an appeal.'" *Reed* is inapposite, however, as it involved neither a constitutional violation nor a guilty plea. In *Reed*, the Court rejected a state prisoner's statutory claim brought under 28 U. S. C. § 2254 on the grounds that the prisoner had neither made a timely objection nor suffered prejudice. See 512 U. S., at 349 ("An unwitting judicial slip of the kind involved here ranks with the nonconstitutional lapses we have held not cognizable in a postconviction proceeding").

terion for collateral review that it mentions is that the error must be jurisdictional or constitutional.[2]

Decisions of this Court that do not involve guilty pleas are not controlling. For example, in *United States* v. *Frady*, 456 U. S. 152 (1982), two of the Court's reasons for dismissing the § 2255 claim alleging that the jury instructions were erroneous are not present in this case. First, the defendant failed to object to the jury instructions—as required by Federal Rule of Criminal Procedure 30—before the jury retired to consider its verdict; no comparable Rule applies to petitioner's claim. Second, as the Court emphasized by quoting from both *United States* v. *Addonizio*, 442 U. S. 178, 184–185 (1979), and *Henderson* v. *Kibbe*, 431 U. S. 145, 154 (1977), the prejudice to the defendant was not sufficient to warrant relief under § 2255; that is plainly not the case with respect to this petitioner. Similarly, in *Davis* v. *United States*, 411 U. S. 233, 242 (1973), there was a failure to comply with Fed-

---

[2] As we explained: "In *Hill* v. *United States*, 368 U. S. 424, the Court was presented with the question whether a collateral attack under § 2255 could be predicated on a violation of Fed. Rule Crim. Proc. 32(a), which gives the defendant the right to make a statement on his own behalf before he is sentenced. The Court rejected the claim, stating: 'The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. . . .' 368 U. S., at 428." *United States* v. *Timmreck*, 441 U. S. 780, 783 (1979). The *Timmreck* Court went on to hold that "[t]he reasoning in *Hill* is equally applicable to a formal violation of Rule 11" because "[s]uch a violation is neither constitutional nor jurisdictional," and the error did not "resul[t] in a 'complete miscarriage of justice' or in a proceeding 'inconsistent with the rudimentary demands of fair procedure.' Respondent does not argue that he was actually unaware of the special parole term or that, if he had been properly advised by the trial judge, he would not have pleaded guilty. His only claim is of a technical violation of the Rule." *Id.*, at 783–784.

eral Rule of Criminal Procedure 12(b)(2), which required challenges to the composition of the grand jury to be made by pretrial motion—a Rule that has no counterpart in the guilty plea context—coupled with the absence of the kind of prejudice that is present here.

The Court has never held that the constitutionality of a guilty plea cannot be attacked collaterally unless it is first challenged on direct review. Moreover, as the facts of this case demonstrate, such a holding would be unwise and would defeat the very purpose of collateral review. A layman who justifiably relied on incorrect advice from the court and counsel in deciding to plead guilty to a crime that he did not commit will ordinarily continue to assume that such advice was accurate during the time for taking an appeal. The injustice of his conviction is not mitigated by the passage of time. His plea should be treated as a nullity and the conviction based on such a plea should be voided.

Because the record in this case already unambiguously demonstrates that petitioner's plea to the § 924(c) charge is invalid as a matter of constitutional law, I would remand with directions to vacate his § 924(c) conviction and allow him to plead anew.

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, dissenting.

I agree with the Court that petitioner has not demonstrated "cause" for failing to challenge the validity of his guilty plea on direct review. I disagree, however, that a defendant who has pleaded guilty can be given the opportunity to avoid the consequences of his inexcusable procedural default by having the courts inquire into whether " 'it is more likely than not that no reasonable juror would have convicted him' " of the offense to which he pleaded guilty. *Ante*, at 623, quoting *Schlup* v. *Delo*, 513 U. S. 298, 327–328 (1995).

No criminal-law system can function without rules of procedure conjoined with a rule of finality. Evidence not intro-

duced, or objections not made, at the appropriate time cannot be brought forward to reopen the conviction after judgment has been rendered. In the United States, we have developed generous exceptions to the rule of finality, one of which permits reopening, via habeas corpus, when the petitioner shows "cause" excusing the procedural default, and "actual prejudice" resulting from the alleged error. *United States* v. *Frady,* 456 U. S. 152, 167–168 (1982). We have gone even beyond that generous exception in a certain class of cases: cases that have actually gone to trial. There we have held that, "even in the absence of a showing of cause for the procedural default," habeas corpus will be granted "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup* v. *Delo, supra,* at 321 (internal quotation marks omitted). In every one of our cases that has considered the possibility of applying this so-called actual-innocence exception, a defendant had asked a habeas court to adjudicate a successive or procedurally defaulted constitutional claim *after his conviction by a jury.* See *Kuhlmann* v. *Wilson,* 477 U. S. 436, 441, 452 (1986) (opinion of Powell, J.); *Murray* v. *Carrier,* 477 U. S. 478, 482, 495–496 (1986); *Smith* v. *Murray,* 477 U. S. 527, 529, 537–538 (1986); *McCleskey* v. *Zant,* 499 U. S. 467, 471, 502 (1991); *Sawyer* v. *Whitley,* 505 U. S. 333, 336–337, 339–340 (1992); *Schlup, supra,* at 305, 317–332.

There are good reasons for this limitation: First and foremost, it is feasible to make an accurate assessment of "actual innocence" when a trial has been had. In *Schlup,* for example, we said that to sustain an "actual innocence" claim the petitioner must "show that it is more likely than not that no reasonable juror would have convicted him *in the light of the new evidence.*" 513 U. S., at 327 (emphasis added). That "new evidence" was to be evaluated, of course, along with the "old evidence," consisting of the transcript of the trial. The habeas court was to "make its determination concerning

the petitioner's innocence in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Id.*, at 328 (internal quotation marks omitted). As the Court's opinion today makes clear, *ante*, at 624, the Government is permitted to supplement the trial record with any additional evidence of guilt, but the court begins with (and ordinarily ends with) a complete trial transcript to rely upon. But how is the court to determine "actual innocence" upon our remand in the present case, where conviction was based upon an admission of guilt? Presumably the defendant will introduce evidence (perhaps nothing more than his own testimony) showing that he did not "use" a firearm in committing the crime to which he pleaded guilty, and the Government, eight years after the fact, will have to find and produce witnesses saying that he did. This seems to me not to remedy a miscarriage of justice, but to produce one.*

---

*The Court believes these concerns are overstated because, in the federal system, the court must be satisfied that there is a factual basis for the plea. See *ante*, at 624, n. 3. This displays a sad lack of solicitude for state courts, which handle the overwhelming majority of criminal cases. But even in the federal system, the "factual basis" requirement will typically be of no use. Consider the factual basis for the guilty plea in the present case, as set forth in the plea agreement:

"The parties . . . agree that, on or about March 19, 1990, . . . the defendant knowingly used firearms during and in relation to a drug-trafficking offense . . . . The following firearms were found in the defendant's bedroom near the 6.9 grams of methamphetamine: a loaded Walther PBK .380 caliber handgun, serial number A016494; and a loaded .22 caliber Advantage Arms 4-shot revolver. The defendant admits ownership and possession of these two guns. This conduct constituted a violation of Title 18, United States Code, Section 924(c). Three other firearms were found in the two briefcases containing the bulk of the methamphetamine: a loaded .22 caliber North American Arms handgun, serial number C7854; a loaded .45 caliber Colt Model 1911 semiautomatic handgun, serial number 244682;

Second, the Court has given as one of its justifications for the super-generous miscarriage-of-justice exception to inexcusable default, "the fact that habeas corpus petitions that advance a substantial claim of actual innocence are extremely rare." *Schlup, supra,* at 321. That may be true enough of petitions challenging jury convictions; it assuredly will not be true of petitions challenging the "voluntariness" of guilty pleas. I put "voluntariness" in quotation marks, because we are not dealing here with only *coerced* confessions, which may indeed be rare enough. The present case is here because, in *Henderson* v. *Morgan,* 426 U. S. 637, 644–646 (1976), this Court held that where neither the indictment, defense counsel, nor the trial court explained to the defendant that intent to kill was an element of second-degree murder, his plea to that offense was "involuntary." A plea, the Court explained, can "not be voluntary *in the sense that* it constitute[s] an intelligent admission that he committed the offense unless the defendant receive[s] 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Id.,* at 645, quoting *Smith* v. *O'Grady,* 312 U. S. 329, 334 (1941). Of course the word "voluntary" had never been used (by precise speakers, at least) *in that sense*—in the sense of "intelligent"—and what the *Henderson* line of cases did was, by sleight-of-tongue, to obliterate the distinction between *involuntary* confessions and *misinformed* or even *uninformed* confessions. Once all those categories have been lumped to-

---

an unloaded Ruger .357 caliber revolver, serial number 151–36099. The defendant denies knowledge of these guns." App. 8.

Of course "knowingly used" in this statement presumably means "knowingly used" in the erroneous sense that prompts this litigation. And that will almost always be the situation where the "involuntariness" of the plea is a consequence of subsequently clarified uncertainty in the law: The factual basis will not include a fact which, by hypothesis, the court and the parties think irrelevant.

gether, the cases within them are not at all rare, but indeed exceedingly numerous.

It is well established that "when this Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law." *Rivers* v. *Roadway Express, Inc.,* 511 U. S. 298, 313, n. 12 (1994). Thus, every time this Court resolves a Circuit split regarding the elements of a crime defined in a federal statute, most, if not all, defendants who pleaded guilty in those Circuits on the losing end of the split will have confessed "involuntarily," having been advised by the court, or by their counsel, that the law was what (as it turns out) it was not—or even (since this would suffice for application of *Henderson*) merely *not* having been advised that the law was what (as it turns out) it was. Indeed the latter basis for "involuntariness" (mere lack of "'real notice of the true nature of the charge against him,'" *Henderson, supra,* at 645) might be available even to those defendants pleading guilty in the Circuits on the *winning* side of the split. Thus, our decision in *Bailey* v. *United States,* 516 U. S. 137 (1995), has generated a flood of 28 U. S. C. § 2255 habeas petitions, each asserting actual innocence of "using" a firearm in violation of 18 U. S. C. § 924(c). This Term, we will resolve a Circuit split over the meaning of another element ("carry" a firearm) in the same statute. See *Muscarello* v. *United States,* No. 96–1654; *Cleveland* v. *United States,* No. 96–8837. And we will also resolve Circuit splits over the requisite elements of five other federal criminal statutes. See *Salinas* v. *United States,* 522 U. S. 52 (1997) (18 U. S. C. § 666(a)(1)(B)); *Brogan* v. *United States,* 522 U. S. 398 (1998) (18 U. S. C. § 1001); *Bates* v. *United States,* 522 U. S. 23 (1997) (20 U. S. C. § 1097(a)); *Bryan* v. *United States,* No. 96–8422 (18 U. S. C. § 922(a)(1)(A)); *Caron* v. *United States,* No. 97–6270 (18 U. S. C. § 921(a)(20)).

To the undeniable fact that the claim of "actual innocence" is much more likely to be available in guilty-plea cases than

in jury-trial cases, there must be added the further undeniable fact that guilty-plea cases are very much more numerous than jury-trial cases. Last year, 51,647 of the 55,648 defendants convicted and sentenced in federal court (or nearly 93 percent) pleaded guilty. Administrative Office of the United States Courts, L. Mecham, Judicial Business of the United States Courts: 1997 Report of the Director 214.

When all these factors are taken into account, it could not be clearer that the premise for our adoption in *Schlup* of the super-generous "miscarriage of justice" exception to normal finality rules—viz., that the cases in which defendants seek to invoke the exception would be "extremely rare"—is simply not true when the exception is extended to guilty pleas. To the contrary, the cases will be extremely frequent, placing upon the criminal-justice system a burden it will be unable to bear—especially in light of the fact, discussed earlier, that on remand the habeas trial court will not have any trial record on the basis of which to make the "actual innocence" determination.

Not only does the disposition agreed upon today overload the criminal-justice system; it makes relief available where equity demands that relief be denied. When a defendant pleads guilty, he waives his right to have a jury make the requisite findings of guilt—typically in exchange for a lighter sentence or reduced charges. Thus, defendants plead guilty to charges that have not been proved—that perhaps *could not* be proved—in order to avoid conviction on charges of which they are "actually guilty," which carry a harsher penalty. Under today's holding, a defendant who is the "wheelman" in a bank robbery in which a person is shot and killed, and who pleads guilty in state court to the offense of voluntary manslaughter in order to avoid trial on felony-murder charges, is entitled to federal habeas review of his contention that his guilty plea was "involuntary" because he was not advised that intent to kill was an element of the manslaughter offense, and that he was "actually innocent" of man-

slaughter because he had no intent to kill. In such a case, it is excusing the petitioner from his procedural default, not holding him to it, that would be the miscarriage of justice.

The Court evidently seeks to avoid this absurd consequence by prescribing that the defendant's "showing of actual innocence must also extend" to any charge the Government has "forgone," *ante,* at 624. This is not even a fully satisfactory solution in theory, since it assumes that the "forgone" charge is identifiable. If, as is often the case, the bargaining occurred before the charge was filed ("charge-bargaining" instead of "plea-bargaining"), it will almost surely not be identifiable. And of course in practical terms, the solution is no solution at all. To avoid the patent inequity, the Government will be called upon to refute, without any factual record to rely upon, not only the defendant's testimony of his innocence on the charge of conviction, but his testimony of innocence on the "forgone" charge as well—and as to the second, even the finding of "factual basis" required in federal courts, see n., *supra,* will not exist. But even if rebuttal evidence existed, it is a bizarre waste of judicial resources to require minitrials on charges made in dusty indictments (or indeed, if they could be identified, on charges *never made*), just to determine whether the defendant can litigate a procedurally defaulted challenge to a guilty plea on a *different* offense. Rube Goldberg would envy the scheme the Court has created.

* * *

It would be marvellously inspiring to be able to boast that we have a criminal-justice system in which a claim of "actual innocence" will always be heard, no matter how late it is brought forward, and no matter how much the failure to bring it forward at the proper time is the defendant's own fault. But of course we do not have such a system, and no society unwilling to devote unlimited resources to repetitive criminal litigation ever could. The "actual innocence" ex-

ception this Court has invoked to overcome inexcusable procedural default in cases decided by a jury "seeks to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." *Schlup*, 513 U. S., at 324. Since the balance struck there simply does not obtain in the guilty-plea context, today's decision is *not* a logical extension of *Schlup*, and it is a grave mistake. For these reasons, I respectfully dissent.