**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 96-30394
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MARY BETH THOMPSON,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana

October 16, 1998

ON PETITION FOR REHEARING

(Opinion September 23, 1997, 5th Cir., _____F.3d_____)

Before JONES, DeMOSS, and PARKER, Circuit Judges.

PER CURIAM:

The motion for rehearing and motion to stay mandate in this matter were granted and the court held the opinion in abeyance pending the Supreme Court's decision in *Bousley v. United States*, ___ U.S. ___, 118 S. Ct. 1604 (1998). The original opinion, filed on September 23, 1997, *United States v. Thompson*, 122 F.3d 304 (5th Cir. 1997), is now withdrawn and the following opinion is substituted in its place.

Mary Beth Thompson ("Thompson") appeals the district court's denial of her 28 U.S.C. § 2255 motion contending that her conviction and sentence for using and carrying firearms in relation to the commission of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1), should be reversed in light of the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 1370 (1995). We affirm.

### FACTS AND PROCEEDINGS BELOW

Thompson was convicted pursuant to a plea bargain for, *inter alia*, using and carrying firearms in relation to the commission of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Thompson's arrest followed the execution of a search warrant at her residence. Drug Enforcement Agency ("DEA") agents found amphetamine, chemicals used in the manufacturing of amphetamine and two semi-automatic pistols during the search of Thompson's house. The firearms charged to Thompson were found in two different bureau drawers in a bedroom, with one of the pistols being in a purse within a bureau drawer. Thompson was not in the bedroom when the search warrant was executed and no drugs were found in the room in which the firearms were found.

On September 20, 1989, Thompson pleaded guilty to Count I of the indictment (conspiracy to dispense and distribute amphetamine within 100 feet of a school yard) and to Count V (using and carrying a firearm during a drug trafficking offense). The

district court sentenced Thompson to 151 months of imprisonment on Count I, and five years, to run consecutively to the imprisonment imposed in Count I, on Count V. Thompson did not appeal her conviction.

On March 8, 1996, Thompson filed this § 2255 motion seeking to have her conviction and sentence on the firearm charge overturned in light of the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 1370 (1995). The district court denied the § 2255 motion. Thompson timely appealed the denial to this court, filing her notice of appeal prior to April 24, 1996, the date on which the President signed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214.

## DISCUSSION

### A.

The AEDPA amended 28 U.S.C. § 2253 to require a certificate of appealability ("COA") before an appeal may proceed in a § 2255 action. This court has determined that the COA requirement does not apply retroactively to petitioners who filed § 2255 appeals in which the final judgment and notice of appeal were entered before the AEDPA's effective date. *United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997). Likewise, the AEDPA's certification requirement regarding successive petitions does not apply. *Id.* Accordingly, we proceed to the merits of her appeal.

### B.

3

In reviewing a district court's denial of a § 2255 motion, we examine the lower court's factual findings for clear error and its conclusions of law *de novo*. *United States v. Faubion*, 19 F.3d 226, 228 (5th Cir. 1994).

Thompson argues that her conviction for using or carrying a firearm in relation to a drug trafficking offense should be overturned because the firearms with which she was charged were not found on her person, in her possession or within the vicinity of her arrest and therefore she could not be found to have either "used" or "carried" the firearms, as required by 18 U.S.C. § 924(c)(1). Thompson contends that under *Bailey*, she could not have been convicted based on the mere storage of a firearm near drugs or drug proceeds.

Section 924(c)(1) is violated when a defendant "during and in relation to any crime of violence or drug trafficking crime...uses or carries a firearm." 18 U.S.C. § 924(c)(1). Under *Bailey*, Thompson could not be convicted under the "use" provision for the firearms found stored in her home. *See Bailey*, 116 S. Ct. at 505, 508 ("'use' cannot extend to encompass [the] action" of "conceal[ing] a gun nearby to be ready for an imminent confrontation").

Because Thompson pleaded guilty to an indictment stating that she "knowingly used __and__ carried a firearm" (emphasis added), the Government is only required to prove one of the acts charged, *i.e.,*

4

the use prong <u>or</u> the carry prong. *See Turner v. United States*, 396 U.S. 398, 420-21 (1970). The district court denied Thompson's § 2255 motion based on a finding of sufficient evidence to support Thompson's conviction under the "carry" prong of § 924(c).

Pursuant to the Supreme Court's recent opinion in *Bousley v. United States*, ___ U.S. ___, 118 S. Ct. 1604 (1998), a petitioner can successfully petition for § 2255 relief after a guilty plea only if: (1) the plea was not entered voluntarily or intelligently, *see id.* at 1610-11, or (2) the petitioner establishes that she is actually innocent of the underlying crime. *See id*. at 1611-12.

In *Bousley*, a petitioner collaterally attacked his § 924(c)(1) conviction pursuant 28 U.S.C. § 2255. *See id.* at 1608-09. Based on the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995) -- rendered following his guilty plea -- the petitioner argued that his plea was not knowingly or intelligently entered. *See Bousley*, 118 S. Ct. at 1609.

The Court refused to addressed whether the plea was entered knowingly and intelligently, because Bousley had procedurally defaulted by failing to challenge the validity of his plea on direct review. *See id.* at 1610. In order to overcome this procedural default, the Supreme Court required Bousley to show cause and prejudice or to demonstrate his actual innocence. *See id*. at 1611. Further, the Court ruled that Bousley was unable to show cause for his default, rejecting Bousley's claims that prior

5

to the Supreme Court's decision in *Bailey,* a *Bailey*-type attack on § 924(c)(1) conviction was novel or futile. *See Bousley* at 1611. Thus, the fact that the law was unsettled, or settled incorrectly in petitioner's circuit, did not excuse the petitioner's failure to directly attack the validity of his plea. *See id.*

Next the Court articulated the standard for showing actual innocence. "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *See Bousley*, 118 S. Ct. at 1611 (internal quotation marks omitted)(quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)). The Court distinguished actual innocence from mere legal insufficiency. *See Bousley*, 118 S. Ct. at 1611. Moreover, the Court noted that the Government could produce any admissible evidence of Bousley's guilt in order to sustain the underlying conviction -- not merely the evidence presented during the plea colloquy. *See id.* at 1611-12. With these standards established, the Court remanded the action to allow Bousley the opportunity to establish his actual innocence. *See id*. at 1612.

Like Bousley, Thompson failed to challenge the validity of her guilty plea on direct appeal and has procedurally defaulted on the challenge. In order to overcome this default, Thompson must establish cause and prejudice or actual innocence. In the wake of *Bousley*, Thompson's cause and prejudice argument is foreclosed.

Thompson's only remaining claim is that she is actually innocent of the charged crime. The Government maintains that Thompson's conviction can be sustained under *Pinkerton v. United States*, 328 U.S. 640 (1946). In order for the Government to prevail based on a *Pinkerton* argument in this context, the evidence must show that a coconspirator committed the crime which formed the basis of the conviction challenged by the petitioner. The record on appeal, which includes the transcript of the Tubblevilles' trial, established that Thompson's coconspirator used or carried the same firearm with which Thompson was charged. Count V of the indictment charged all three defendants -- Thompson, Travis Wayne Tubbleville and Jerry Joe Tubbleville -- with using and carrying the two firearms recovered during the search. Evidence in the proceedings against Travis Wayne Tubbleville established that, while in his vehicle in furtherance of the drug conspiracy charged in Count I (conspiracy to distribute amphetamine within 1000 feet of a school), and in relation to the drug offense as charged in Count V (using and carrying a firearm during and relation to the commission of a drug trafficking crime) Tubbleville "became concerned that he was being followed by another vehicle and pulled out a pistol, which he cocked and put between his legs for easy access." *United States v. Tubbleville*, No. 90-3269, at 3(unpublished opinion)(5th Cir. Nov. 7, 1990). Tubbleville was convicted on Count V of the indictment on the basis of this

evidence. His actions clearly constitute active employment of the firearm and satisfy both the use and carry prongs of § 924(c)(1). *See Bailey*, 116 S. Ct. at 505. We find such evidence likewise sufficient to support Thompson's conviction based on co-conspirator liability. *See United States v. Jensen*, 41 F.3d 946, 955-56 (5th Cir. 1995)(A party to a conspiracy may be held responsible for a substantive offense committed by a coconspirator in furtherance of a conspiracy even if that party does not participate in or have knowledge of the substantive offense.) Further, it is of no moment that the evidence was not proffered during Thompson's plea colloquy. *Bousley* specifically provides that the Government may produce non-record evidence of a petitioner's guilt to rebut actual innocence arguments. *See Bousley*, 118 S. Ct. at 1611-12. Based on the *Pinkerton* theory of co-conspirator liability, Thompson's claim of innocence cannot succeed, and the record being sufficient, we have no need to remand for an evidentiary hearing.

Based on the foregoing, we conclude that the district court's order denying Thompson's habeas petition must be affirmed.

AFFIRMED.

DeMOSS, Circuit Judge, dissenting in part and concurring in part:

I concur in the majority's determination that the Supreme Court's recent decision in *Bousley v. United States*, ___ U.S. ___, 118 S. Ct. 1604 (1998), forecloses Thompson from contending that her guilty plea was not entered into knowingly and intelligently because the decision of the Supreme Court in *Bailey v. United States*, 516 U.S. 137, 116 S. Ct. 501 (1995), changed the law as to what constituted "use" of a firearm under 18 U.S.C. § 924(c)(1). Like the defendant in *Bousley*, Thompson failed to challenge the validity of her guilty plea on direct appeal and has procedurally defaulted as to that challenge.

However, I cannot join the majority in depriving Thompson of the relief which the Supreme Court so clearly indicated in *Bousley* was available, i.e. the opportunity to establish her "actual innocence" in an evidentiary hearing before the district court. Rather than remanding this case to the district court for such an evidentiary hearing on "actual innocence" the majority reads *Bousley* as permitting this Circuit Court to make the determination of "actual innocence" based upon the evidence which the panel majority finds available in the record of Thompson's appeal. I find nothing in *Bousley* which supports this short circuiting of the

opportunity to establish "actual innocence" in an evidentiary hearing at the district court level. Consequently, I disagree with the panel majority that we have any jurisdiction to make that factual determination in this appeal.

Secondly, the panel majority, in arriving at its conclusion that Thompson could not prove she was "actually innocent," relies on testimony and evidence presented during the trial of Travis Wayne Tubbleville and Jerry Joe Tubbleville who were co-defendants in the same indictment in which Thompson was charged. However, Thompson pled guilty to two counts in this indictment some three or four weeks before the Tubbleville trial even began; and consequently neither Thompson nor her counsel were present during the Tubbleville trial. Using testimony presented in the Tubbleville trial clearly deprives Thompson of her right to confront and cross-examine the witness against her. Furthermore, I see nothing which would permit us to conclude that the transcript of the Tubblevilles' trial is part of Thompson's record on appeal. I see nothing in the record which would indicate that the transcript of the Tubblevilles' trial was introduced as evidence before the district court on Thompson's § 2255 hearing and I see no reference whatsoever in the district court's opinion to any of the testimony in the Tubblevilles' trial. I am confident that if Thompson had been represented by counsel, rather than being pro se, the process by which counsel for the government slipped in the references to the testimony in the Tubblevilles' trial would have

10

been promptly nipped in the bud.

Lastly, I cannot join the panel majority's short circuiting of the actual innocence determination by relying on the vicarious liability theory of **Pinkerton v. United States**, 328 U.S. 640 (1946). I do not think the **Pinkerton** theory applies in this case for two reasons:

a. First of all, the only conspiracy count in the indictment against Thompson and the Tubblevilles was Count I, which asserted a conspiracy to dispense and distribute amphetamine within 1,000 feet of a public school. There is absolutely nothing in that conspiracy count relating to the "using or carrying of firearms." It seems axiomatic to me that a conspiracy to dispense and distribute amphetamines can be implemented and performed without "using or carrying" a firearm; and therefore the scope of that conspiracy would not include anything about using or carrying firearms. There is no evidence or testimony whatsoever in this record upon which a conclusion could be drawn that in conspiring to dispense and distribute amphetamines Thompson and the Turblevilles necessarily agreed to use and carry firearms.

b. Secondly, in Count V, which is the using or carrying a firearm count, alleges that Thompson used or carried the firearm during and in relation to her commission of Count IV. Count IV charged possession with intent to manufacture and distribute amphetamines. Thompson did not plead guilty to Count IV of the

11

indictment.   Moreover, Count IV of the indictment is a pure substantive offense count and has no conspiracy aspects to it whatsoever.

In sum, I am unable to make the incredible stretch required to conclude that the testimony entered in the Tubblevilles' trial can support a *Pinkerton* vicarious liability finding against Thompson on the basis of evidence and testimony which Thompson never had an opportunity to cross-examine where Thompson did not plead guilty to the underlying predicate offense, and where the only conspiracy charged did not involve using or carrying a firearm.

In my view *Bousley* requires us to remand this matter to the district court for an evidentiary hearing in which Thompson would have the opportunity to prove she was actually innocent of "using or carrying a firearm" during and in relation to Count IV, as charged in Count V.  My colleagues obviously think that Thompson could not carry the burden of proving her "actual innocence," but well-established Supreme Court law mandates that that is a judgment to be explored and determined by the district court.