Norma NIEVES, Petitioner,

v.

**UNITED STATES of America,
Respondent.**

**No. CIV.A.03–40243–NMG.**

United States District Court,
D. Massachusetts.

Aug. 3, 2005.

David H. Hennessy, U.S. Attorney's Office, Worcester, MA, for United States of America, Respondent.

## MEMORANDUM & ORDER

GORTON, District Judge.

This petition for habeas corpus filed pursuant to 28 U.S.C. § 2255 arises out of the petitioner's guilty plea and sentence with respect to five counts of conspiring to distribute cocaine base, distributing cocaine base and distributing cocaine hydrochloride. Petitioner, Norma Nieves ("Nieves"), seeks to vacate her sentence on the grounds that 1) she received ineffective assistance of counsel, 2) the prosecutor engaged in misconduct and 3) the super-

vised release component of her sentence exceeded the maximum under governing law.

## I. *Background*

In 1999, Nieves and her son, Alex, began selling drugs for Anthony Nelson ("Nelson") in exchange for money or cocaine. During September 1999, Nieves sold cocaine and cocaine base on four occasions on behalf of an individual who, unbeknownst to them, was cooperating with the Drug Enforcement Administration ("the CW"). On September 13, 1999, Nieves sold the CW 0.8 grams of cocaine base.[1] The next day, she sold the CW 1.08 grams of cocaine base. On September 21, 1999, she sold the CW 1.07 grams of cocaine powder. On September 23, 1999, she sold the CW 2.03 grams of cocaine base. Those sales, which totaled 3.91 grams of cocaine *base* and 1.07 grams of cocaine powder, are not in dispute.

The final sale which was attributed to Nieves occurred on December 7, 1999 and it forms the basis of the instant petition. On that day, the CW ordered cocaine base from Alex and he delivered $250 worth and promised to return with more. When Alex did not return, the CW telephoned Nieves's residence to speak with him. Nieves answered and the CW asked if Alex could come by. Nieves responded that Alex had rushed out to a friend's house. Nieves' counsel offered an unofficial transcript of the phone call in which Nieves responded to the CW's statement that Alex was to deliver him more drugs. It includes the following exchange:

   Nieves: Didn't he just give you that?

---

1. In her memorandum, Nieves mischaracterizes the 0.8 grams as being cocaine rather than cocaine base and she attaches a laboratory report to that effect. The drugs are, however, properly characterized as cocaine base as determined by a subsequent laboratory finding and report. In the initial report, the laboratory had not been asked to differentiate between cocaine and cocaine base so it did not do so.

CW: Yeah. He's supposed to give me more though.

Nieves: Yeah?

CW: He couldn't find Xiomara and Anth[ony Nelson] is not in town.

Nieves: Oh.

CW: So he was paging people to see if they would do what do you call it . . . If anybody has anything. Are you sure he didn't make up that story to you.

At the end of the conservation, Nieves agreed that she would call the CW if she saw Alex. A short time later, Alex called the CW and delivered more cocaine base, bringing the total for the day to 1.63 grams. The subject dispute concerns whether those sales were properly attributed to Nieves, thereby making her responsible for an aggregate of more than five grams of cocaine base and triggering a mandatory minimum sentence of 60 months imprisonment.

Nieves was arrested and her attorney obtained funds and engaged an expert to analyze independently the drugs that formed the basis of the charges. On June 7, 2002, she pled guilty to one count of distributing cocaine, three counts of distributing cocaine base and one count of conspiring to distribute cocaine base.

The Probation Office found her responsible for the distribution of 5.54 grams of cocaine base by attributing to her the 1.63 grams involved in the December 7, 1999 sales. Nieves' counsel objected, arguing that Nieves had withdrawn from the conspiracy in October, 1999 because she had discovered she was expecting twins. She claims to have conveyed that information to the CW. Counsel also related Nieves' version of the events of December 7, 1999, including her contention that she was not involved in the transactions.

The Probation Office dismissed the objection because, at the time, it erroneously believed that Nieves had pled guilty to conspiring to distribute more than five grams of cocaine base. At the commencement of the sentencing hearing on June 7, 2002, the Court shared that erroneous belief. The government advised the Court that Nieves had not, in fact, admitted responsibility for more than five grams and the Court invited argument on whether the sales on December 7, 1999 should be attributed to her.

Nieves' counsel argued that it was not clear from the record that the defendant had been aware of the sales before the telephone call or that she had remained part of the conspiracy after October, 1999. The Court rejected that argument, found her responsible for the sales and sentenced her to 60 months' imprisonment, the mandatory minimum, and a four-year term of supervised release.

Nieves appealed on the grounds that she should not have been held accountable for the December 7, 1999 sales and that her supervised release term exceeded the maximum authorized under 21 U.S.C. § 841(b) and 18 U.S.C. § 3583(b). The First Circuit Court of Appeals affirmed the sentence.

On November 3, 2003, Nieves filed the instant petition for a writ of habeas corpus on the grounds that: 1) she received ineffective assistance of counsel, 2) the government engaged in prosecutorial misconduct and 3) the supervised release component of her sentence exceeded the maximum under governing law. On October 4, 2004, petitioner wrote a letter to this Court asking whether *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) had any implications for her case. That letter is, however, now moot in light of *United States v. Booker,* —— U.S. ——,

125 S.Ct. 738, 160 L.Ed.2d 621 (2005) and will not be addressed.

## II. *Legal Analysis*

■ Petitioner's second and third grounds for relief warrant only brief comment. Nieves contends that "the prosecution misled the Probation Office" by informing it that she had admitted to being responsible for more than five grams of cocaine base. She offers absolutely no evidence in support of that contention and the facts suggest that it is inaccurate. At the sentencing hearing, as soon as the misunderstanding became known, the government informed the Court that the defendant had not admitted to being responsible for more than five grams of cocaine base. Apparently, the Probation Office simply made a mistake. Nieves allegation of intentional misconduct is unsustainable and, in any event, because the mistake was corrected, it had no prejudicial effect upon the proceedings.

■ The length of Nieves' term of supervised release, has been litigated and decided on direct appeal. Consequently, it cannot be re-litigated in this proceeding. *Argencourt v. United States*, 78 F.3d 14, 16 n. 1 (1st Cir.1996).

■ Petitioner also suggests that her guilty plea was not made knowingly and voluntarily because she did not know she could be held liable for more than five grams of cocaine base. Although the government is probably correct when it contends that her brief reference to that argument does not properly raise the issue, to the extent it does, the argument fails because it was not raised on direct appeal. *Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)("the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review").

The petitioner's principal ground for relief is that she received ineffective assistance of counsel because her attorney failed: 1) to review the laboratory reports which, allegedly, would have shown that the September 13, 1999 sale involved cocaine powder and not cocaine base, 2) to offer evidence at the sentencing hearing to show that she was not responsible for the December 7, 1999 sales, 3) to advise her that she could be held accountable for more than five grams of cocaine base or 4) to inform her that she could listen to and offer into evidence the tape recording of the December 7, 1999 telephone call.

Under the so-called *Strickland* test, in order to succeed on a claim of ineffective assistance of counsel, the petitioner must prove that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced her. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ Petitioner's first claim of error is unavailing because, as explained above, the September 13, 1999 transaction involved cocaine base. The reason that the initial laboratory report relating to that transaction identified only "cocaine" is because the laboratory was not asked whether the cocaine was in base or powder form and it does not make that determination by default. Thus, the calculations offered in petitioner's memorandum, which assume the subject transaction involved powder cocaine, are wrong, the calculations offered by the government are correct and defense counsel would have gained nothing by arguing to the contrary.

■ The second claim of ineffective assistance has no basis in fact because defense counsel vigorously contested Nieves's responsibility for the December 7,

1999 sales. Counsel prepared and offered a transcript of the telephone conversation, partially reproduced *supra,* which included notes highlighting the inflections in Nieves's voice, i.e. suggesting that the transactions were news to her. Counsel also filed a five-page, single-spaced memorandum detailing why Nieves should not be held responsible for the transactions and, at the sentencing hearing, counsel offered oral argument to that effect.

The failure of counsel to call petitioner's son, Alex, to testify is not surprising because Nieves fails to explain how his testimony would have persuaded the Court that she was uninvolved. Likewise, counsel's failure to play the tape recording of the telephone call for the Court was harmless because a transcript, with notes, was, in fact, offered. Nieves's argument that she should not be held responsible for the December 7, 1999 sales ultimately failed not because counsel was ineffective but, rather, because the evidence demonstrated that she was properly held responsible.

■ Finally, petitioner's argument that she was not informed that she could offer the tape recording or that she could be held responsible for more than five grams of cocaine base, is disingenuous. To the extent that Nieves argues that she was not informed of her potential exposure, the record conclusively proves otherwise. At the change of plea hearing, Nieves was specifically informed that she could be held responsible for more than five grams of cocaine base as a result of the December 7, 1999 transactions. In fact, when those transactions were being discussed, Nieves personally made the comment that she should not be held responsible for them. She was abundantly aware of the stakes involved.

Significantly, Nieves does not contend that she was prejudiced (nor could she) because conspicuously absent is any allega-

tion that, had petitioner been made aware of her exposure, she would not have pled guilty. Thus, for all of the above reasons, this petition for a writ of habeas corpus will be dismissed.

## ORDER

In accordance with the foregoing, the petitioner's Motion to Vacate, Set Aside or Correct Sentence (Docket No. 1) is **DENIED** and this petition is **DISMISSED.**

**So ordered.**