# IN THE COURT OF APPEALS OF IOWA

No. 23-0650
Filed May 8, 2024

**DANIEL RAY PENTICOFF,**
　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　Respondent-Appellee.
_____

　　Appeal from the Iowa District Court for Black Hawk County, Kellyann M. Lekar, Judge.

　　The applicant appeals the denial of his application for postconviction relief. **AFFIRMED.**

　　Tiffany Kragnes, Des Moines, for appellant.

　　Brenna Bird, Attorney General, and Joshua A. Duden, Assistant Attorney General, for appellee State.

　　Considered by Tabor, P.J., and Greer and Schumacher, JJ. Buller, J., takes no part.

**GREER, Judge.**

Daniel Penticoff appeals the denial of his application for postconviction relief (PCR) following his guilty plea to first-degree robbery in 2015. He maintains he established that he is actually innocent of the crime because his extreme intoxication and mental condition on the night in question made it impossible for him to form the requisite intent to commit robbery in the first degree. While we generally review PCR proceedings for errors at law, "[t]o the extent [Penticoff's] claim of actual innocence raises constitutional questions, our review is de novo." *Dewberry v. State*, 941 N.W.2d 1, 4 (Iowa 2019).

"The purpose of allowing an applicant to present a freestanding actual innocence claim is to provide a safety-valve for those convicted of an offense but 'who ha[ve] committed no crime.'" *Id.* at 6 (alteration in original) (quoting *Schmidt v. State*, 909 N.W.2d 778, 793 (Iowa 2018)). "For an applicant to succeed on a freestanding actual-innocence claim, the applicant must show by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant of the crimes for which the sentencing court found the applicant guilty . . . ." *Schmidt*, 909 N.W.2d at 797. "'[A]n applicant bringing a freestanding claim of actual innocence is claiming he or she is *factually and actually innocent.*' Factual and actual innocence requires an applicant to prove he or she was actually innocent of the offense for which he or she was convicted, including any lesser included offenses." *Dewberry*, 941 N.W.2d at 6 (alteration in original) (internal citation omitted). Consistent with the approach taken by the Supreme Court, "'actual innocence' means factual innocence, not mere legal insufficiency." *Id.* at 7 (quoting *Bousley v. United States*,

523 U.S. 614, 623 (1998)). Generally, a claim of actual innocence is potentially viable where the defendant "wholly denied the offense occurred." *Id.* at 6.

As relevant to Penticoff, a defendant is guilty of first-degree robbery when:

> 1. The defendant had the specific intent to commit a theft.
> 2. To carry out his intention or to assist him in escaping from the scene, with or without the stolen property, the defendant:
> a. Committed an assault on (victim) and in committing the assault the defendant used or displayed a dangerous weapon in connection with the assault . . . or
> b. Threatened (victim) with, or purposely put (victim) in fear of immediate serious injury.
> 3. The defendant was armed with a dangerous weapon.

*See* Iowa Crim. Jury Instruction 1100.1; *see also* Iowa Code § 711.2 (2014).

When testifying at the PCR hearing, Penticoff admitted he remembered or the record evidence otherwise established the following: in the early morning hours of August 30, 2014, Penticoff left his parents' home and broke into a vehicle, stealing it and a handgun, before ending up outside the home of B.E. There, Penticoff was at least attempting to enter one of B.E.'s vehicles when B.E. noticed and approached him. Penticoff reacted to B.E.'s "aggression" by pointing the stolen handgun at him and ordering him to "get the fuck away." Penticoff then fled in the stolen vehicle and traveled some distance before stealing a second vehicle. Penticoff hit other cars as he drove before ultimately crashing into the car of another driver at a high rate of speed; he was taken into police custody soon thereafter.

Penticoff maintains he is actually innocent of first-degree robbery, arguing he was justified in pointing the gun at B.E. out of self-defense and that his ingestion of prescription drugs and alcohol was at a level that made him incapable of forming the requisite intent to commit an assault. But these arguments go to legal

innocence rather than the factual innocence that is necessary to succeed on a claim of actual innocence.[1] We doubt Penticoff has even properly asserted a claim of actual innocence on this record. *See Dewberry*, 941 N.W.2d at 6 (recognizing *Schmidt* involved a "potentially viable claim of actual innocence" because the applicant "wholly denied the [underlying] offense occurred"); *id.* at 7 ("A prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime." (citation omitted)).

But even if he has, like the district court, we have little trouble concluding his claim fails—a reasonable factfinder could easily question the credibility of Penticoff's self-serving statements regarding his level of intoxication, ability to form the necessary intent, and his need to defend himself from B.E. while trespassing on B.E.'s property and trying to enter B.E.'s vehicles. Penticoff cannot establish by clear and convincing evidence that no reasonable factfinder could find him guilty of first-degree robbery; we affirm.

**AFFIRMED.**

---

[1] In his own words, Penticoff conceded, "I think I should have went to prison, hundred percent, but not for first degree robbery. . . . But what crimes I did that night, hundred percent deserve repercussions."