Justice THOMAS, dissenting.
Last Term the Court held in Johnson v. United States, 576 U.S. ----, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), that because the residual clause of the Armed Career Criminal Act of 1984 (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii), "combin[es] indeterminacy about how to measure the risk posed by *1269 a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony," it is unconstitutionally vague. 576 U.S., at ----, 135 S.Ct., at 2558. Federal prisoners then sought to invoke Johnson as a basis for vacating their sentences in federal collateral review proceedings. See 28 U.S.C. § 2255(a).
Today the Court holds that Johnson applies retroactively to already final sentences of federal prisoners. That holding comes at a steep price. The majority ignores an insuperable procedural obstacle: when, as here, a court fails to rule on a claim not presented in a prisoner's § 2255 motion, there is no error for us to reverse. The majority also misconstrues the retroactivity framework developed in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and its progeny, thereby undermining any principled limitation on the finality of federal convictions. I respectfully dissent.
I
As the majority observes with considerable understatement, "[t]his case comes to the Court in a somewhat unusual procedural posture." Ante, at 1263. This case arises from petitioner Gregory Welch's challenge to the Eleventh Circuit's denial of a certificate of appealability. § 2253(c)(1). In other words, Welch asks the Court to review the Eleventh Circuit's refusal to allow him to appeal the claims he raised in a motion to vacate his sentence and lost in the District Court. But Welch never claimed that the residual clause was unconstitutionally vague in his § 2255 motion, let alone that Johnson applies retroactively. Accordingly, courts below addressed neither issue. Indeed, Johnson was not even decided when the courts below issued their rulings. Those deficiencies should preclude us from deciding in this case whether Johnson is retroactive.
Our role in reviewing the denial of a certificate of appealability is far more circumscribed than normal appellate review. The text of 28 U.S.C. § 2253 confirms this. Defendants can appeal their convictions and sentences as a matter of right on direct review, but § 2253 deprives courts of appeals of jurisdiction to review the denial of a petitioner's motion for federal postconviction relief unless he obtains a "certificate of appealability." § 2253(c)(1). And he can obtain that certificate only if he makes "a substantial showing of the denial of a constitutional right." § 2253(c)(2) ; see Miller-El v. Cockrell, 537 U.S. 322, 335-336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).
Accordingly, this Court has instructed that review of the denial of a certificate of appealability is a retrospective inquiry into whether the movant's claims, as litigated in the district court, warrant further proceedings-not whether there is any conceivable basis upon which the movant could prevail. Courts must ask whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (emphasis added). They are to "look to the District Court's application of [the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) ] to petitioner's constitutional claims and ask whether that resolution was debatable." Miller-El, supra, at 336, 123 S.Ct. 1029 (emphasis added).
Until today, we did not require courts of appeals to consider all possible constitutional issues that might warrant relief as part of this inquiry. Those courts instead looked to how the movant framed his case in his motion to vacate. Even if, for example, a district court denies habeas relief *1270 based on procedural default and never reached the merits, the movant must establish not only that the procedural ruling is "debatable" but also that his motion "state[d] a valid claim of the denial of a constitutional right." Slack, supra, at 484, 120 S.Ct. 1595.
Requiring a court of appeals to consider arguments not raised in a § 2255 motion is also at odds with how the Court has described the certificate-of-appealability inquiry. The Court has called the decision whether to grant a certificate of appealability a "threshold" inquiry that "forbids" reviewing courts to engage in "full consideration of the factual or legal bases adduced in support of the claims." Miller-El, supra, at 336, 123 S.Ct. 1029. That is because, in the Court's view, the point of "[t]he [certificate of appealability] process [is to] scree[n] out issues unworthy of judicial time and attention and ensur[e] that frivolous claims are not assigned to merits panels." Gonzalez v. Thaler, 565 U.S. 134, 145, 132 S.Ct. 641, 181 L.Ed.2d 619 (2012). There would be no surer way to transform this determination into a full-blown merits appeal than to require courts of appeals to consider all conceivable bases for relief that the movant failed to raise.
Welch's failure to raise any Johnson- related claim in the District Court should, therefore, bar the Eleventh Circuit and this Court from addressing whether Johnson applies retroactively. Welch's § 2255 motion omitted any claim that his sentence was invalid because the ACCA's residual clause is unconstitutionally vague.[1] Unsurprisingly, the District Court did not address a vagueness claim that Welch had not raised. Nor did (or could) the District Court assess whether Johnson applies retroactively, for we decided Johnson after the District Court ruling. In sum, when Welch raised the vagueness of the residual clause for the first time in his Eleventh Circuit application for a certificate of appealability, it was too late.
The Government responds to this issue by attempting, in its reply brief in this Court, to "expressly waiv[e] any procedural default defense against petitioner on his Johnson claim." Reply Brief for United States 22. But this case has not been framed as one involving a "procedural default," which ordinarily refers to the affirmative defense that a petitioner defaulted his claim in some earlier proceeding. See McCleskey v. Zant, 499 U.S. 467, 490, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (describing, in the context of a federal habeas petition brought by a state prisoner, "procedural default" as the "presumption against [federal] habeas adjudication ... of claims defaulted in state court"); see also, e.g., Jenkins v. Anderson, 447 U.S. 231, 234, n. 1, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) (noting that procedural default is an affirmative defense that must be raised); 28 U.S.C. § 2254 Rule 5 (requiring the Government to "state whether any claim in the petition is barred by a ... procedural bar" in the answer to the motion).
Welch instead failed to raise that claim in this proceeding by failing to present it in his motion to vacate his sentence. And the Court of Appeals, when deciding whether to grant a certificate of appealability, cannot be expected to look beyond the claims presented in that motion in conducting its threshold inquiry about *1271 whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S., at 484, 120 S.Ct. 1595 (emphasis added). Although the Government purports to waive any forfeiture defense now, it cannot alter what was before the Court of Appeals. After Welch failed to raise a Johnson claim in his § 2255 motion and the Eleventh Circuit denied a certificate of appealability, the Government could not inject the claim into the case.
Rather than grappling with these issues, the majority distorts the standard for reviewing certificates of appealability by asking whether reasonable jurists would debate the "conclusion" that Welch "failed to show any entitlement to relief." Ante, at 1272. The majority thereby transforms what should be a quick "overview of the claims in the habeas petition, " Miller-El, 537 U.S., at 336, 123 S.Ct. 1029 (emphasis added), to a searching review of the "conclusion " that a prisoner is not entitled "any " collateral relief. Ante, at 1272 (emphasis added). That is preposterous. The Eleventh Circuit, according to the majority, erred by denying Welch the opportunity to "appeal" a claim that he failed to raise, in part because a decision that did not yet exist when the Eleventh Circuit ruled may entitle him to relief. The majority's view of AEDPA demands judicial clairvoyance; Courts of Appeals can avoid reversal only by inventing arguments on the movant's behalf.
II
After bypassing what should have been an insurmountable procedural hurdle, the majority then gets the merits wrong. The retroactivity rules the Court adopted in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334, generally foreclose prisoners from collaterally challenging their convictions based on new decisions that postdate their convictions and sentences. The only exceptions to that bar are for decisions that announce a new substantive rule or a new "watershed" procedural rule. See ante, at 1272 - 1273. All agree that Johnson announced a new rule and that it is not a "watershed" procedural rule. See ante, at 1272. But the rule in Johnson also does not satisfy our criteria for substantive rules. The majority concludes otherwise, ante, at 1272 - 1273, but its approach fails under Teague 's own terms and erodes any meaningful limits on what a "substantive" rule is.
A
The Court has identified two types of substantive rules, and Johnson 's rule of decision fits neither description. It is not a new substantive constitutional rule, nor does it narrow the scope of a criminal statute through statutory construction.
1
Time and again, the Court has articulated the test for defining a substantive constitutional rule as follows: The rule must "place particular conduct or persons covered by the statute beyond the State's power to punish." Schriro v. Summerlin, 542 U.S. 348, 352, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) ; see also Beard v. Banks, 542 U.S. 406, 416, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004) (similar); Penry v. Lynaugh, 492 U.S. 302, 330, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (rule is substantive if "the Constitution itself deprives the State of the power to impose a certain penalty"). This is also the test the Court has purported to apply in case after case. See, e.g., Sawyer v. Smith, 497 U.S. 227, 233, 241, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990) (prohibiting prosecutors from misleading the jury to believe that it was not responsible for a death sentence was a nonsubstantive rule that did not "place an entire category of primary conduct beyond *1272 the reach of the criminal law" or "prohibit imposition of a certain type of punishment for a class of defendants because of their status or offense"). Our precedents thus make clear the distinction between substantive and nonsubstantive constitutional rules. A rule that "because [a State] has made a certain fact essential to the death penalty, that fact must be found by a jury," is not substantive; it had no effect on the "range of conduct a State may criminalize." Schriro, 542 U.S., at 353-354, 124 S.Ct. 2519. But a rule in which this Court "ma[de] a certain fact essential to the death penalty ... would be substantive"; it would change the range of conduct warranting a death sentence. Id., at 354, 124 S.Ct. 2519.
Under these principles, Johnson announced a new constitutional rule, but it is not substantive. Johnson 's new constitutional rule is that a law is unconstitutionally vague if it "requires a court to picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction presents a serious potential risk" of some result. 576 U.S., at ----, 135 S.Ct., at 2557. Such laws are vague because they simultaneously create "indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify" as the described offense. Id., at ----, 135 S.Ct., at 2558. Together, those two indeterminacies "produc[e] more unpredictability and arbitrariness than the Due Process Clause tolerates." Ibid .
But that rule is not substantive under our precedents. It does not preclude the Government from prohibiting particular conduct or deem any conduct constitutionally protected. The Government remains as free to enhance sentences for federal crimes based on the commission of previous violent felonies after Johnson as it was before. Cf. Butler v. McKellar, 494 U.S. 407, 415, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990) (deciding that a new rule was not substantive because "[t]he proscribed conduct" was "capital murder, the prosecution of which is, to put it mildly, not prohibited by the rule"). Nor does Johnson 's vagueness rule place any class of persons or punishment off limits. There is no category of offender that Congress cannot subject to an enhanced sentence after Johnson. See James v. United States, 550 U.S. 192, 230, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007) (Scalia, J., dissenting) (Congress "very easily" could "subjec[t] all repeat offenders to a 15-year mandatory minimum prison term" in differently worded statute (emphasis deleted)). The only constraint Johnson imposes is on the manner in which the Government can punish offenders. To avoid "fail[ing] to give ordinary people fair notice" or "invit[ing] arbitrary enforcement," 576 U.S., at ----, 135 S.Ct., at 2556, Congress must be clearer in describing what conduct "otherwise ... presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).
2
Johnson also does not fit within the second type of substantive rule this Court has recognized, which consists of "decisions that narrow the scope of a criminal statute by interpreting its terms." Schriro, 542 U.S., at 351, 124 S.Ct. 2519 ; see id., at 351-352, 124 S.Ct. 2519 (contrasting these rules with "constitutional determinations" that rule out punishing conduct or persons).
The Court has invoked this subset of new rules just once, in Bousley v. United States, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Bousley held that Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), which interpreted a federal firearms sentencing enhancement to require proof of " 'active *1273 employment of the firearm' " as an element, applied retroactively. 523 U.S., at 616-617, 118 S.Ct. 1604. The Court explained that Teague 's bar on retroactively applying "procedural rules" is "inapplicable to the situation in which this Court decides the meaning of a criminal statute enacted by Congress." 523 U.S., at 620, 118 S.Ct. 1604. Moreover, the Court reasoned, "decisions of this Court holding that a substantive federal criminal statute does not reach certain conduct" share a key commonality with "decisions placing conduct beyond the power of the criminal law-making authority to proscribe": both "necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal." Ibid. (internal quotation marks omitted). The Court thus classified decisions "holding that a substantive federal criminal statute does not reach certain conduct" as substantive. Ibid.
I would not so readily assume that Bousley applies here. Until today, Bousley applied only to new rules reinterpreting the text of federal criminal statutes in a way that narrows their reach. Johnson announced no such rule. It announced only that there is no way in which to narrow the reach of the residual clause without running afoul of the Due Process Clause. 576 U.S., at ---- - ----, 135 S.Ct., at 2560-2561.
The majority protests that applying different retroactivity principles to constitutional and statutory rules produces "unusual outcomes" because a decision interpreting a statute's text to narrow its scope may be retroactive, while a decision declaring the provision unconstitutional might not be. Ante, at 1268. But such outcomes are an inevitable byproduct of the Court's retroactivity jurisprudence, not a unique consequence of this case. Take a statute allowing the Federal Government to prosecute defendants for "serious crimes involving interstate commerce" of which they were acquitted in state court. See Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) (no double jeopardy bar to such prosecutions). Suppose the Court, concerned that there might be a double jeopardy problem after all, narrowed the meaning of "serious crimes involving interstate commerce" to encompass only felonies that would be subject to a statutory maximum sentence of life imprisonment. Anyone acquitted of a minor felony by the State but convicted by the Federal Government before this Court's narrowing construction could, in the majority's view, seek relief on collateral review under Bousley . See ante, at 1268. But if the Court ruled that the Double Jeopardy Clause bars all federal reprosecutions, I doubt that rule would be retroactive. That rule dictates when a defendant may be tried and convicted of certain conduct-not the substance of the crime for which the defendant is tried, or the punishment imposed.
The Court's historical justifications for retroactivity underscore the reasons for treating statutory and constitutional rules differently. The Court in the 1950's "extend[ed] the scope of habeas to all alleged constitutional errors" to "forc[e] trial and appellate courts in both the federal and state system to toe the constitutional mark" in the face of perceived systemic violations. Mackey v. United States, 401 U.S. 667, 687, 91 S.Ct. 1171, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in judgments in part and dissenting in part). That development led to the Teague framework allowing retroactivity for certain types of constitutional rules. See Montgomery v. Louisiana, 577 U.S. ----, ---- - ----, 136 S.Ct. 718, 737-738, 193 L.Ed.2d 599 (2016) (Scalia, J., dissenting) (recounting history). But this Court has *1274 never suggested that lower courts had similar difficulties in interpreting the reach of criminal statutes, such that the retroactivity rules should be the same. Rather, the history suggests that the failure to apply a narrowing construction of a criminal statute is a qualitatively different type of error.
B
The majority instead determines whether a rule is substantive by looking to the "function of the rule," ante, at 1265, and asking "whether the new rule itself has a procedural function or a substantive function," ante, at 1266. This apparently means that courts should divine the effect of a new rule and decide whether that effect alters the substantive elements of a crime or sentence. All that matters, the majority says, is that the vagueness rule announced in Johnson had the effect of invalidating the residual clause and, as a result of its invalidation, the residual clause "can no longer mandate or authorize any sentence." Ante, at 1265 ("striking down the residual clause" is what "changed the substantive reach of [ACCA]").
That approach is untenable. It brushes aside the rule of decision, which is where all of our prior precedents begin and end for purposes of applying Teague . When deciding whether rules are substantive, our cases have homed in on the rule that would apply not just to the specific statute at hand, but in similar, future circumstances. Thus, just this Term, the Court defined the rule announced in Miller v. Alabama, 567 U.S. ----, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), as: The Eighth Amendment "prohibit[s] ... mandatory life without parole for juvenile offenders"-not that Alabama's juvenile-sentencing statute flouts the Eighth Amendment. Montgomery, supra, at ----, 136 S.Ct., at 732-733. Likewise, the rule announced in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), was that "a sentencing judge, sitting without a jury, [may not] find an aggravating circumstance necessary for imposition of the death penalty"-not that provisions of Arizona's death penalty statute violate the Sixth Amendment. Schriro, 542 U.S., at 353, 124 S.Ct. 2519 (internal quotation marks omitted; alteration in original). By jettisoning that approach and focusing solely on Johnson 's effect (the invalidation of the residual clause), the majority departs from our precedents.
The majority's focus on the effect of a decision breaks down all meaningful distinctions between "new" and "old" rules, or "substantive" and "procedural" ones. The first step of the Teague inquiry assesses whether the rule is "new" by looking to whether prior precedents dictated the rule of decision-not its effects. See, e.g., Chaidez v. United States, 568 U.S. ----, ----, 133 S.Ct. 1103, 1107, 185 L.Ed.2d 149 (2013) (internal quotation marks omitted). But if, as the majority contends, the "function of the rule," ante, at 1265, is the relevant baseline, then every case invalidating a statute or a sentence establishes a "new" rule. The law's invalidation would be a departure from any prior decision that interpreted the law as if it were operative. Likewise, if any decision has the effect of invalidating substantive provisions of a criminal statute, it is a substantive rule under the majority's approach no matter what the reason for the statute's invalidation.
The majority denies that "every decision striking down a statute is ipso facto a substantive decision," saying that only when a decision invalidates a provision that "regulates conduct and prescribes punishment" is it retroactive. Ante, at 1268. But that still transforms innumerable *1275 procedural rules into substantive ones. Take a state law that defines the crime of robbery and specifies that only 10 of the 12 jurors need to vote to convict someone of that crime. If this Court were to reverse Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), and hold that the Sixth Amendment requires unanimous jury verdicts, the portion of the statute allowing nonunanimity would be invalid. But assume that the state statute was nonseverable: the Court's jury unanimity rule, undoubtedly "procedural," would have the effect of invalidating not only the portion of the state statute regarding unanimity but also the provision defining the crime of robbery, a provision that "regulates conduct." Ante, at 1268. To the majority, these effects would make the rule substantive. That approach is mistaken, and would also produce arbitrary results. Suppose most States had similar statutes, but that some had robust severability provisions and others did not. In some States, the decision would be procedural; elsewhere, it would be substantive, producing a patchwork of statute-specific outcomes.
Finally, the majority flips Teague on its head with its alternative contention that Johnson must have announced a substantive rule because it is "not a procedural decision." Ante, at 1265. Teague is a general rule against retroactivity, see ante, at 1264 - 1265, and all new rules are barred unless they fit within the exceptions for substantive or "watershed" procedural rules. 489 U.S., at 310-311, 109 S.Ct. 1060 (plurality opinion). To say that a rule is "not ... procedural" is not enough. And even if it were, the rule in Johnson fits better within the Court's descriptions of procedural rules than substantive ones. "Procedural rules ... are designed to enhance the accuracy of a conviction or sentence by regulating 'the manner of determining the defendant's culpability.' " Montgomery, 577 U.S., at ----, 136 S.Ct., at 730 (quoting Schriro, supra, at 353, 124 S.Ct. 2519 ). And the rule in Johnson regulates only the manner in which Congress defined a sentencing enhancement, not the conduct that triggers the punishment. E.g., Smith v. Goguen, 415 U.S. 566, 572-573, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974) (vagueness doctrine "requires legislatures to set reasonably clear guidelines" to give "fair notice or warning" and "prevent arbitrary and discriminatory enforcement" (internal quotation marks omitted)).
III
Today's opinion underscores a larger problem with our retroactivity doctrine: The Court's retroactivity rules have become unmoored from the limiting principles that the Court invoked to justify the doctrine's existence. Under Teague itself, the question whether Johnson applies retroactively would be a straightforward "No." If this question is close now, that is only because the Court keeps moving the goalposts.
As the majority observes, the foundations of our approach to retroactivity in collateral review come from Justice Harlan's separate opinions in Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), and Mackey v. United States, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404. Ante, at 1264. There, Justice Harlan confronted a now-familiar problem: how to address the consequences of an ever-evolving Constitution. He responded with an approach to retroactivity that placed at the forefront the need for finality in the criminal process. See, e.g., 401 U.S., at 682-683, 91 S.Ct. 1160. In his view, very few rules that emerged after a prisoner's conviction-including constitutional rules-warranted disturbing that conviction. See *1276 id., at 686-692, 91 S.Ct. 1160. Justice Harlan saw only "two exceptions": "bedrock procedural" rules, id., at 692-693, 91 S.Ct. 1160 and "[n]ew 'substantive due process' rules" removing "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," id., at 692, 91 S.Ct. 1160. As examples of the latter category, he cited such rules as that the First Amendment forbids criminalizing flag burning, that the right to privacy precludes the Government from prosecuting distributors of contraception, and that the "freedom to marry" and equal protection principles immunize couples from being punished for entering into interracial marriages. Id., at 692, n. 7, 91 S.Ct. 1160. These " 'substantive due process' rules," Justice Harlan explained, were "on a different footing" because "the writ has historically been available for attacking convictions on such grounds." Id., at 692-693, 91 S.Ct. 1160. Moreover, society has an "obvious interest in freeing individuals for punishment for conduct that is constitutionally protected." Id., at 693, 91 S.Ct. 1160. And granting relief for such claims would not require retrials. Ibid.
When Teague adopted Justice Harlan's approach, see 489 U.S., at 310, 109 S.Ct. 1060 (plurality opinion), it agreed that to preserve "the principle of finality which is essential to the operation of our criminal justice system," id., at 309, 109 S.Ct. 1060"new rules generally should not be applied retroactively to cases on collateral review," id., at 305, 109 S.Ct. 1060. Teague thus adopted Justice Harlan's two exceptions for "watershed rules of criminal procedure" and rules that "accord constitutional protection to ... primary activity." Id., at 311, 109 S.Ct. 1060 ; see id., at 310, 109 S.Ct. 1060.
The Court then swiftly discarded the limitations that Teague adopted. Penry proclaimed the retroactivity of rules barring certain punishments, even though the Court's constant revision of the Eighth Amendment produces an "ever-moving target of impermissible punishments." Montgomery, 577 U.S., at ----, 136 S.Ct., at 742 (Scalia, J., dissenting) (emphasis deleted); see id., at ---- - ----, 136 S.Ct., at 730-731. Bousley extended retroactive relief for federal prisoners raising statutory claims, not just constitutional ones. See 523 U.S., at 616-617, 620-621, 118 S.Ct. 1604. Montgomery extended Teague to state postconviction proceedings, enshrined Teague as a constitutional command, and redefined substantive rules to include rules that require sentencers to follow certain procedures in punishing juveniles. Now the majority collapses Teague 's substantive-procedural distinction further, allowing any rule that has the incidental effect of invalidating substantive provisions of a criminal statute to become a substantive rule.
Today's decision, like those that preceded it, professes to venerate Justice Harlan's theory of retroactivity. See ante, at 1264; Montgomery, supra, at ----, 136 S.Ct., at 729-730. This rings hollow; these decisions spell its ruin. The Court adopted Justice Harlan's approach to retroactivity because it shared his conviction that "there [must] be a visible end to the litigable aspect of the criminal process." Mackey, supra, at 690, 91 S.Ct. 1160 ; see Teague, supra, at 310, 109 S.Ct. 1060 (plurality opinion) (similar). With the Court's unprincipled expansion of Teague, every end is instead a new beginning.
* * *
For these reasons, I respectfully dissent.

Welch's § 2255 motion did assert that his "robbery under Florida [statutes] is ambiguous, vague, and was without any violence and or physical force," App. 96a, and that Florida robbery "has multimeanings." Id., at 97a. But challenging the vagueness of Florida law is quite different from the argument Welch needed to assert a Johnson claim: that the residual clause is itself unconstitutionally vague.