Filed 7/26/16  In re Balbuena CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re ALEXANDER BALBUENA,<br>     on Habeas Corpus. | A138534<br><br>(Contra Costa County Super.<br> Ct. No. 5-061067-5) |

Alexander Balbuena filed this petition for writ of habeas corpus to challenge the sentence imposed in 2008 for offenses committed when he was 15 or 16 years old. Petitioner urges that his sentence of 82 years to life, reduced on appeal to 72 years, is unconstitutional under the subsequently decided *Miller v. Alabama* (2012) ___ U.S. ___ [132 S.Ct. 2455] (*Miller*), which held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " (*Id.* at p. 2460.)  As will be explained, further developments in the law require us to deny the petition.

**STATEMENT OF THE CASE AND FACTS**

As described in our opinion on petitioner's appeal from his convictions, petitioner was charged together with two adult defendants with the murder of Jose Segura, attempted murder of Auralia Giron, and street terrorism, based on his participation in gang-retaliation offenses in 2006.  (*People v. Balbuena* (May 5, 2010, A122043) [nonpub. opn.].)  A full recitation of the facts is unnecessary here:  It is sufficient to state that the evidence indicated petitioner was one of three people who fired shots into the car where the victim was sitting, but did not fire the fatal shots.  (*Id.* at pp. 4, 9.)  Petitioner

was found guilty of the charged offenses, and found to have intentionally and personally discharged a firearm in the commission of the murder and attempted murder. (*Id.* at p. 2.) He was sentenced to an aggregate prison term of 82 years to life, consisting of 25 years to life for the murder with a mandatory consecutive 25 years to life for the Penal Code[1] section 12022.53 enhancement, a consecutive middle term of seven years for the attempted murder with a mandatory 25 years to life for the section 12022.53 enhancement, and a concurrent middle term of two years for the street terrorism count. (*Balbuena*, at p. 1.) On appeal, we corrected his sentence to a total of 72 years to life, as the section 12022.53 enhancements were erroneously imposed under subdivision (d) of that statute (25 years to life) rather than subdivision (c) (20 years to life), and otherwise affirmed the trial court's judgment.

On May 3, 2013, petitioner, in propria persona, filed a petition for writ of habeas corpus alleging that under case law decided subsequent to his trial, his sentence of 72 years to life was effectively a sentence of life without possibility of parole that violated the constitutional prohibitions against cruel and unusual punishment.[2] We appointed

---

[1] Further statutory references are to the Penal Code unless otherwise indicated.

[2] Petitioner was also pursuing relief in the federal courts. In January 2011, after the California Supreme Court declined to review this court's decision on petitioner's appeal, he filed a pro. per. petition for writ of habeas corpus in the United States District Court for the Northern District of California. On May 11, 2011, the district court issued an order to show cause, the Attorney General submitted an answer and exhibits, and petitioner's family hired an attorney who prepared a traverse. The district court denied the writ petition on May 25, 2012, and denied petitioner's request for a certificate of appealability to the United States Court of Appeals for the Ninth Circuit.

A year later, the Ninth Circuit Court of Appeals issued a certificate of appealability authorizing an appeal from the district court's denied of the habeas petition, limited to the issue of whether petitioner's postarrest statement to law enforcement authorities was voluntary or resulted from police coercion. The court appointed petitioner's present counsel, who after review of the record concluded the law enforcement officers did not properly advise petitioner of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436. Petitioner moved to stay the Ninth Circuit proceedings and remand the case to permit petitioner to file an amended habeas petition. The Ninth Circuit denied this motion without prejudice to filing a renewed motion accompanied by a written indication that the district court was willing to entertain the petition, the district

counsel for petitioner and, on August 4, 2014, a supplemental petition for writ of habeas corpus was filed raising three claims: (1) Under Supreme Court decisions issued subsequent to petitioner's sentencing, his life sentence violates the Eighth Amendment; (2) Petitioner's confession was obtained in violation of his rights under *Miranda v. Arizona, supra,* 384 U.S. 436; and (3) Petitioner's confession was involuntary and admitted at trial in violation of the due process clause. After considering the parties' opposition and reply, on March 15, 2015, we issued an order to show cause on the question whether petitioner was entitled to resentencing under *Miller, supra,* 132 S.Ct. 2455 and *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*).[3]

## DISCUSSION

The United States Supreme Court held in *Miller* that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." (*Miller, supra,* 132 S.Ct. at p. 2469.) Drawing on its prior decisions in *Roper v. Simmons* (2005) 543 U.S. 551, which invalidated the death penalty for juvenile offenders under age 18, and *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*), which held that a sentence of life without parole violates the Eighth Amendment when imposed on juvenile nonhomicide offenders, the court explained that "children are constitutionally different from adults for purposes of sentencing" because, due to their "diminished culpability and greater prospects for reform, . . . 'they are less deserving of the most severe punishments.' " (*Miller,* at p. 2464, quoting *Graham,* at p. 68.) "*Graham* likened a life without parole sentence for nonhomicide offenders to the death

court issued the indicated ruling, and the Ninth Circuit granted a renewed motion to stay appellate proceedings and remand the case for the limited purpose of enabling the district court to consider petitioner's motion under Federal Rule of Civil Procedure section 60(b). On May 7, 2014, petitioner filed a motion in the district court to set aside the judgment and reopen proceedings. The Attorney General filed opposition in July 2014, and as of the filing of petitioner's supplemental petition in this court, petitioner intended to file a reply in the district court.

[3] Petitioner moved to expand the order to show cause to encompass the additional two issues raised in his supplemental writ petition. We denied this motion on April 3, 2015.

penalty itself, given their youth and the prospect that, as the years progress, juveniles can reform their deficiencies and become contributing members of society." (*Caballero, supra,* 55 Cal.4th at p. 266, citing *Graham,* at p. 70.)  And "[w]hile *Graham's* flat ban on life without parole was for nonhomicide crimes, nothing that *Graham* said about children is crime-specific.  Thus, its reasoning implicates any life-without-parole sentence for a juvenile, even as its categorical bar relates only to nonhomicide offenses." (*Miller*, at p. 2458.)  The prohibition against a life-without-parole sentence for a juvenile extends to a "term-of-years sentence that amounts to the functional equivalent of a life without parole sentence." (*Caballero,* at p. 268 [sentence to term of years with parole eligibility date outside natural life expectancy unconstitutional for juvenile nonhomicide offense]; *People v. Franklin* (2016) 63 Cal.4th 261, 276 (*Franklin*) [same for homicide offense].)

"Although *Miller* did not foreclose a sentencer's ability to impose life without parole on a juvenile, the Court explained that a lifetime in prison is a disproportionate sentence for all but the rarest of children, those whose crimes reflect ' "irreparable corruption." ' " (*Montgomery v. Louisiana* (2016) ___ U.S. ___ [136 S.Ct. 718, 726] (*Montgomery*), quoting *Miller, supra,* 132 S.Ct. at p. 2469.)  The *Miller* court "requires sentencers in homicide cases 'to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.' " (*Caballero*, *supra*, 55 Cal.4th at p. 268, fn. 4.)  As *Miller* summarized its analysis:  "So *Graham* and *Roper* and our individualized sentencing cases alike teach that in imposing a State's harshest penalties, a sentencer misses too much if he treats every child as an adult.  To recap: Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences.  It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional.  It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him.  Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with

youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys.  See, *e.g., Graham,* [*supra*, 560 U.S. at [pp. 77-78] ('[T]he features that distinguish juveniles from adults also put them at a significant disadvantage in criminal proceedings'); *J.D.B. v. North Carolina* [(2011)] 564 U.S. [261, 268] (discussing children's responses to interrogation).  And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it."  (*Miller,* at p. 2468.)

In its return to the petition, the Attorney General argues that petitioner has not presented a prima facie case for habeas corpus relief for two reasons:  First, that the claimed constitutional violation has been rendered moot by the enactment of section 3051, which requires that parole suitability hearings be held for juvenile offenders during their 15th, 20th or 25th year of incarceration, depending on the severity of the original sentence; and second, that *Miller* does not apply retroactively.  The latter point has since been established in petitioner's favor (*Montgomery, supra,* 136 S.Ct. 718), but on the former the Attorney General is correct.

*Montgomery* held that *Miller* "announced a substantive rule of constitutional law" that must be given retroactive effect on collateral review.  (*Montgomery*, *supra*, 136 S.Ct. at p. 729.)[4]  *Miller* "did more than require a sentencer to consider a juvenile offender's

---

[4] Substantive rules "set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose.  It follows that when a State enforces a proscription or penalty barred by the Constitution, the resulting conviction or sentence is, by definition, unlawful. Procedural rules, in contrast, are designed to enhance the accuracy of a conviction or sentence by regulating 'the *manner of determining* the defendant's culpability.'  [(*Schriro v. Summerlin* (2004) 542 U.S. 348, 353; *Teague v. Lane* (1989) 489 U.S. 288, 313.)]  Those rules 'merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise.'  [(*Schriro,* at p. 352.)]  Even where procedural error has infected a trial, the resulting conviction or sentence may still be accurate; and, by extension, the defendant's continued confinement may still be lawful. For this reason, a trial conducted under a procedure found to be unconstitutional in a later case does not, as a general matter, have the automatic consequence of invalidating a defendant's conviction or sentence.  [¶]  The same possibility of a valid result does not exist where a substantive

5

youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of "the distinctive attributes of youth.' [(*Miller*, *supra*, 132 S.Ct. at p. 2465)]. Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects ' "unfortunate yet transient immaturity.' " [Citation.] Because *Miller* determined that sentencing a child to life without parole is excessive for all but ' "the rare juvenile offender whose crime reflects irreparable corruption" ' [citation], it rendered life without parole an unconstitutional penalty for 'a class of defendants because of their status'—that is, juvenile offenders whose crimes reflect the transient immaturity of youth. [Citation.] As a result, *Miller* announced a substantive rule of constitutional law. Like other substantive rules, *Miller* is retroactive because it ' " necessarily carr[ies] a significant risk that a defendant" '—here, the vast majority of juvenile offenders—' "faces a punishment that the law cannot impose upon him." ' [(*Schriro v. Summerlin*, *supra*, 542 U.S. at p. 352, quoting *Bousley v. United States* (1998) 523 U.S. 614, 620.)]" (*Montgomery,* at p. 734.)

The Attorney General's other argument, that section 3051 renders appellant's Eighth Amendment claim moot, was recently accepted by the California Supreme Court. (*Franklin*, *supra*, 63 Cal.4th 261.)[5] Section 3051 provides that an offender sentenced to a

---

rule has eliminated a State's power to proscribe the defendant's conduct or impose a given punishment." (*Montgomery, supra,* 136 S.Ct. at pp. 729-730.)

[5] When the California Supreme Court granted review in *Franklin*, it initially ordered briefing deferred pending decision in *In re Alatriste,* No. S214652, review granted December 3, 2013 (220 Cal.App.4th 1232), in which it had previously granted review to address questions including whether section 3051 moots a claim that a life sentence for a juvenile offender violates the Eighth Amendment. The court subsequently ordered briefing on the questions whether the defendant's sentence of 50 years to life violated the Eighth Amendment and whether that issue was rendered moot by the enactment of section 3051. (Supreme Court Docket, *People v. Franklin,* S217699.) *Alatriste* and a number of cases presenting the same and related issues remain pending. (E.g., *In re Kirchner* (2016) 244 Cal.App.4th 1398, rev. granted May 18, 2016, S233508; *People v. Garcia* (2015) 240 Cal.App.4th 1282, rev. granted January 13, 2016, S230616; *People v. Scott* (2015) 235 Cal.App.4th 397, rev. granted July 8, 2015, S226155; *People*

term of 25 years to life for an offense committed before the offender was 23 years old "shall be eligible for release on parole by the [Board of Parole Hearings (board)] during his or her 25th year of incarceration"; if sentenced to a term of less than 25 years to life, the offender becomes eligible for parole during the 20th year of incarceration and if sentenced to a determinate sentence, the offender becomes eligible for parole during the 15th year of incarceration. (§ 3051, subd. (b).)[6] The board must conduct a "youth offender parole hearing" that provides "a meaningful opportunity to obtain release" and, among other things, assesses the offender's "growth and maturity." (§ 3051, subds. (d)-(f).) Section 3051 does not apply to offenders sentenced for certain sex offenses (667.61) or sentenced under the Three Strikes law (§§ 1170.12, subds. (b)-(i), 667).

The legislation by which section 3051 was enacted, Senate Bill No. 260, also added sections 3046, subdivision (c), and 4801, subdivision (c), to the Penal Code. Section 4801, subdivision (c), provides that in reviewing the suitability for parole of an offender whose controlling offense was committed before the age of 23, the board must "give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law." (§ 4801, subd. (c).) Section 3046, subdivision (c), makes inapplicable to such juvenile offenders the provisions of section 3046, subdivisions (a) and (b), which together require that "where two indeterminate

---

*v. Hernandez* (2014) 232 Cal.App.4th 278, rev. granted April 1, 2015, S224383; *People v. Saetern* (2014) 227 Cal.App.4th 1456, rev. granted October 1, 2014, S220790; *People v. Garrett* (2014) 227 Cal.App.4th 675, rev. granted September 24, 2014, S220271; *In re Heard* (2014) 223 Cal.App.4th 115, rev. granted April 30, 2014, S216772.)

[6] Petitioner suggests that section 3051 applies to offenders sentenced to a term of years (subd. (b)(1)), a life sentence with a minimum term of less than 25 years (subd. (b)(2)), or a life sentence with a minimum term of 25 years (subd. (b)(3)), but not those sentenced to a life term with a minimum sentence of *more than* 25 years. Petitioner overlooks that the terms specified in subdivision (b) of section 3051 are based not on the offender's aggregate sentence but on the sentence imposed for his or her "controlling offense," the "offense or enhancement for which any sentencing court imposed the longest term of imprisonment." (§ 3051, subd. (a)(2)(B).)

sentences run consecutively, a defendant must serve the full minimum term of each before becoming eligible for parole." (*Franklin, supra,* 63 Cal.4th at p. 273.)[7]

In *Franklin,* the defendant had been sentenced for offenses committed when he was 16 years old to two mandatory terms of 25 years to life, one for first degree murder and the other for a personal firearm discharge enhancement (§ 12022.53). The Supreme Court held his constitutional challenge to the sentence had been mooted by the enactment of sections 3051 and 4801: "Consistent with constitutional dictates, those statutes provide Franklin with the possibility of release after 25 years of imprisonment (§ 3051, subd. (b)(3)) and require the Board of Parole Hearings (Board) to 'give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity' (*id.,* § 4801, subd. (c))." (*Franklin, supra,* 63 Cal.4th at p. 268.)[8] *Franklin* explained that section 3051 was enacted "explicitly to bring juvenile sentencing into conformity with *Graham*, *Miller,* and *Caballero*"[9] and "reflects the Legislature's judgment that 25 years is the maximum amount of time that a juvenile offender may serve before becoming eligible for parole."

---

[7] Section 3046, subdivision (c), provides, "Notwithstanding subdivisions (a) and (b), an inmate found suitable for parole pursuant to a youth offender parole hearing as described in Section 3051 shall be paroled regardless of the manner in which the board set release dates pursuant to subdivision (a) of Section 3041, subject to subdivision (b) of Section 3041 and Sections 3041.1 and 3041.2, as applicable."

[8] The court found it unnecessary to decide whether a life sentence with parole eligibility after 50 years in prison is the functional equivalent of a life sentence without possibility of parole and, if so, whether the sentence was unconstitutional in that particular case. (*Franklin, supra,* 63 Cal.4th at p. 268.)

[9] The Legislature declared, in the bill by which section 3051 was enacted, that "[t]he purpose of this act is to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity, in accordance with the decision of the California Supreme Court in [*Caballero*] and the decisions of the United States Supreme Court in [*Graham*], and [*Miller*]. It is the intent of the Legislature to create a process by which growth and maturity of youthful offenders can be assessed and a meaningful opportunity for release established." (Sen. Bill No. 260 (2013–2014 Reg. Sess.) § 1, pp. 2-3.)

(*Franklin*, at pp. 277-278.) The court held that sections 3051 and 3046 had "superseded the statutorily mandated sentences of inmates who . . . committed their controlling offense before the age of [23]" (*Franklin*, at p. 278); section 3051 "effectively reforms the parole eligibility date of a juvenile offender's original sentence so that the longest possible term of incarceration before parole eligibility is 25 years." (*Franklin,* at p. 281.) The court concluded, "In sum, the combined operation of section 3051, section 3046, subdivision (c), and section 4801 means that Franklin is now serving a life sentence that includes a meaningful opportunity for release during his 25th year of incarceration. Such a sentence is neither life without parole [(LWOP)] nor its functional equivalent. Because Franklin is not serving an LWOP sentence or its functional equivalent, no *Miller* claim arises here. The Legislature's enactment of Senate Bill No. 260 has rendered moot Franklin's challenge to his original sentence under *Miller.*" (*Franklin*, at pp. 279-280.)

We recognize that *Franklin* differs from the present case in that it addressed the issue presented on a direct appeal rather than, as in the present case, in a collateral proceeding. If the remedy provided by section 3051 is sufficient to cure the constitutional deficiency in a sentence challenged directly on appeal, it is necessarily sufficient to overcome the same challenge raised by petition for writ of habeas corpus after the sentence has become final. The text of section 3051 "makes clear that the Legislature intended youth offender parole hearings to apply retrospectively, that is, to all eligible youth offenders regardless of the date of conviction," but "[t]he Legislature did not envision that the original sentences of eligible youth offenders would be vacated and that new sentences would be imposed to reflect parole eligibility during the 15th, 20th, or 25th year of incarceration." (*Franklin, supra,* 63 Cal.4th at p. 278) In *Montgomery*, the United States Supreme Court noted that a state "may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. See, *e.g.,* Wyo. Stat. Ann. § 6–10–301 (c) (2013) (juvenile homicide

9

offenders eligible for parole after 25 years)." (*Montgomery, supra,* 136 S.Ct. at p. 736.)[10] "Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." (*Ibid.*) This is what section 3051 accomplishes.

Petitioner suggests that under the individualized sentencing called for by *Miller* and *Montgomery*, a trial judge might well decide that a sentence of 25 years to life is too harsh in his case. He points to the facts that he had no prior juvenile offenses; his adult codefendants received determinate sentences of 9 and 45 years, although one of them most likely fired the fatal shots; and the shooting was motivated by the traumatic experience of his close friend being shot to death the evening before. Petitioner does not explain, however, what authority would allow a sentencing judge to impose a sentence of less than 25 years to life for the convictions he suffered. The prohibition described in *Miller* and its progeny is that "a state may not require a sentencing authority to impose LWOP on juvenile homicide offenders; the sentencing authority must have individualized discretion to impose a less severe sentence and, in exercising that discretion, must take into account a wide array of youth-related mitigating factors." (*Franklin, supra,* 63 Cal.4th at p. 275, quoting *Miller*, *supra*, 132 S.Ct. at pp. 2468–2469.) Section 3051 "establishes what is, in the Legislature's view, the appropriate time to determine whether a juvenile offender has 'rehabilitated and gained maturity' (Stats. 2013, ch. 312, § 1) so that he or she may have 'a meaningful opportunity to obtain release' (§ 3051, subd. (e))." (*Franklin,* at p. 278.) As *Franklin* explained, the effect of section 3051 is that petitioner "is now serving a life sentence that includes a meaningful opportunity for release during

---

[10] The Wyoming statute cited in *Montgomery* provides, "A person sentenced to life imprisonment for an offense committed before the person reached the age of eighteen (18) years shall be eligible for parole after commutation of his sentence to a term of years or after having served twenty-five (25) years of incarceration, except that if the person committed any of the acts specified in W.S. 7-13-402 (b) after having reached the age of eighteen (18) years the person shall not be eligible for parole." (Wyo. Stat. Ann. § 6-10-301 (c).)

his 25th year of incarceration."  Because a sentence with a minimum term of 25 years is *not* the functional equivalent of a life sentence without possibility of parole, appellant has no claim to a lesser sentence under *Miller.*  (*Franklin,* at pp. 279-280.)

## DISPOSITION

The petition for writ of habeas corpus is denied.

_____
Kline, P.J.

We concur:


_____
Richman, J.


_____
Miller, J.