15-2707(L)
Gupta v USA

_____

RAJAT K. GUPTA,

*Petitioner-Appellant*,

- v. -

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

_____

Before: KEARSE, WESLEY, and DRONEY, *Circuit Judges*.

Petitioner Rajat K. Gupta, whose 2012 convictions of substantive and conspiracy crimes of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, and 18 U.S.C. § 371, were upheld on appeal in 2014, *see United States v. Gupta*, 747 F.3d 111

(2d Cir. 2014), appeals from a 2015 judgment of the United States District Court for the Southern District of New York, Jed S. Rakoff, *Judge*, denying Gupta's motion to vacate his convictions pursuant to 28 U.S.C. § 2255 on the ground that the trial court's instructions to the jury as to the "personal benefit" component of an insider trading offense were legally invalid in light of this Court's 2014 decision in *United States v. Newman*, 773 F.3d 438 (2d Cir. 2014) ("*Newman*"). The district court denied the motion, concluding principally that Gupta, who had objected to those instructions at trial, procedurally defaulted his present contention by not pursuing his objection on the direct appeal from his conviction; that he made no showing that would excuse the default; and that, in any event, the jury instructions were consistent with *Newman*, even as interpreted by Gupta. *See United States v. Gupta*, 111 F.Supp.3d 557, 561 (S.D.N.Y. 2015). On this appeal, Gupta concedes that he procedurally defaulted his challenge to the trial court's personal benefit instruction; but he contends that the default should be excused on the grounds of cause and prejudice, or actual innocence, or inapplicability of the normal default principles in light of the Supreme Court's decision in *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). We conclude that his contentions lack merit, and we affirm the denial of his motion for relief from the judgment of conviction.

2

Affirmed.

GARY P. NAFTALIS, New York, New York (David S. Frankel, Alan R. Friedman, Robin M. Wilcox, Elliot A. Smith, Kramer Levin Naftalis & Frankel, New York, New York, on the brief), *for Petitioner-Appellant*.

DAMIAN WILLIAMS, Assistant United States Attorney, New York, New York (Preet Bharara, United States Attorney for the Southern District of New York, Margaret Garnett, Assistant United States Attorney, New York, New York, on the brief), *for Respondent-Appellee*.

*Per Curiam*[*]:

Petitioner Rajat Gupta, who stands convicted of substantive and conspiracy crimes of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, and 18 U.S.C. § 371, *see United States v. Gupta*, 747 F.3d 111 (2d Cir. 2014) ("*Gupta I*"), appeals from a judgment of the United States District Court for the Southern District of New York, Jed S. Rakoff, *Judge*, which denied Gupta's motion to vacate his convictions pursuant to 28 U.S.C. § 2255 on the ground that the court's instructions to the jury as to the "personal benefit" component of an insider trading offense were legally invalid in light of this Court's subsequent decision in *United States v. Newman*,

---

[*] This decision was originally entered as a summary order on January 7, 2019; the summary order is withdrawn.

3

773 F.3d 438 (2d Cir. 2014) ("*Newman*"). The district court denied the motion, concluding principally that Gupta, who had objected to those instructions at trial, procedurally defaulted his present contention by not pursuing his objection on the direct appeal from his conviction; that he made no showing that would excuse the default; and that, in any event, the jury instructions were consistent with *Newman*, even as interpreted by Gupta. *See United States v. Gupta*, 111 F.Supp.3d 557, 561 (S.D.N.Y. 2015) ("*Gupta II*").

This Court granted Gupta's application for a certificate of appealability on the issues of (1) whether his conviction should be vacated on the ground that the jury was erroneously instructed, and (2) whether any procedural default of this claim may be excused on the grounds of (a) cause and prejudice or (b) actual innocence. On appeal, Gupta concedes that he procedurally defaulted his challenge to the trial court's personal benefit instruction; but he contends that the default should be excused on the grounds of cause and prejudice, or actual innocence, or inapplicability of the normal default principles in light of the Supreme Court's decision in *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). For the reasons that follow, we see no error in the decision of the district court, and we affirm the decision in *Gupta II* denying Gupta's motion for relief from the judgment of conviction. We assume the

4

parties' familiarity with the underlying facts, procedural history, and issues for review.

Gupta's convictions of engaging in and conspiring to engage in an insider trading scheme were based on evidence that on several occasions Gupta, while serving on boards of directors of various companies, disclosed material nonpublic information about those companies to his friend and business associate Raj Rajaratnam, founder of the Galleon Group ("Galleon"), a family of hedge funds that invested billions of dollars for its principals and clients, *see Gupta I*, 747 F.3d at 116, 121. In his direct appeal from the judgment of conviction, Gupta principally challenged the admission in evidence of certain wiretap evidence and challenged the exclusion of certain evidence he sought to introduce. We rejected all of Gupta's contentions and affirmed the judgment. *See id.* at 128-40. Gupta did not challenge the sufficiency of the evidence to convict him or any of the instructions to the jury.

After Gupta's appeal had been decided, this Court decided *Newman*, 773 F.3d at 438, in which we reversed the insider trading convictions of two tippees.

In his present § 2255 motion, Gupta quotes the following parts of the trial court's instructions to the jury at his trial:

5

First, [the government must prove that] on or about the date alleged, Mr. Gupta engaged in an insider trading scheme, in that, *in anticipation of receiving at least some modest benefit in return*, he provided to Mr. Rajaratnam the material non-public information specified in the count you are considering . . . .

. . . .

[A]s to the benefit that the defendant anticipated receiving, *the benefit does not need to be financial or to be tangible in nature. It could include, for example, maintaining a good relationship with a frequent business partner*, or obtaining future financial benefits.

(Gupta brief on appeal at 10 (all emphases and alterations in brief).) He contends that

[t]he instruction thus *began* by emphasizing, in a formulation plainly invalid following *Newman*, that "the benefit does not need to be financial or to be tangible in nature." By way of example, the district court continued, "maintaining a good relationship" with Rajaratnam would suffice. The instruction thus permitted, consistent with the government's theory, proof and arguments in the case, a guilty verdict based on the relationship, alone, as the benefit.

(*Id*. at 10-11 (emphasis in original).) Gupta contends that his convictions should be vacated on the ground that *Newman*, "[b]y contrast, . . . held that a personal benefit must take the form of an 'exchange'—a *quid pro quo*—in which the alleged tipper receives an 'objective, consequential . . . gain of a pecuniary or similarly valuable nature,' or at least the opportunity for such gain." (*Id*. at 11 (quoting *Newman*, 773 F.3d at 452)). We disagree.

6

"[A] collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), or that he is 'actually innocent,' *Murray*, *supra*, at 496; *Smith v. Murray*, 477 U.S. 527, 537 (1986)." *Bousley v. United States*, 523 U.S. 614, 622 (1998). In order to demonstrate cause, a defendant must show "some objective factor external to the defense," *Murray v. Carrier*, 477 U.S. 478, 488 (1986), such that the claim was "so novel that its legal basis [was] not reasonably available to counsel," *Reed v. Ross*, 468 U.S. 1, 16 (1984). Novelty, or futility, however, "cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Bousley*, 523 U.S. at 623 (internal quotation marks omitted). "[T]he question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." *United States v. Thorn*, 659 F.3d 227, 233 (2d Cir. 2011) (quoting *Smith v. Murray*, 477 U.S. 527, 537 (1986)). "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, *or failed to raise the claim despite recognizing it*, does not constitute cause for a procedural default." *Murray v. Carrier*,

7

477 U.S. at 486 (emphasis added).

Further, in order to meet the cause-and-prejudice standard, the prejudice that must be shown is "not merely whether 'the instruction is undesirable, erroneous, or even universally condemned,'" but rather "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,'" *Frady*, 456 U.S. at 169 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)); *see Frady*, 456 U.S. at 166 ("The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." (internal quotation marks and emphasis omitted)). And in order to demonstrate his actual innocence, a defendant must prove his "factual innocence, not mere legal insufficiency," and "demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)). Gupta has made none of the requisite showings.

*No "Cause"*

As to cause, we recently noted in *Whitman v. United States*, No. 15-2686, 2018 WL 5828118 (2d Cir. Nov. 7, 2018) (summary order) ("*Whitman*")—another insider trading case in which the direct appeal was decided shortly before our decision in *Newman*—that the defendant had objected at trial to the court's personal benefit instruction but did not pursue that objection on appeal. We noted that the same objection had been pressed by defendants in other cases prior to our decision in *Newman*. We concluded that Whitman did not show cause for his failure to challenge the personal benefit instructions on appeal: "If other counsel were able to raise the argument, including Whitman's own former attorney, we cannot say the same argument was unavailable to his appellate counsel." *Whitman*, 2018 WL 5828118 at *2.

Although *Whitman* was decided by nonprecedential summary order, the fact that we "[d]eny[] summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases," Order dated June 26, 2007, adopting 2d Cir. Local R. 32.1.1, and we see no basis for any different outcome here. Defendants in other insider trading prosecutions were contending that juries should be given narrower definitions of the personal benefit needed to find culpable

insider trading. Gupta at his trial objected to the instructions he challenges now. We conclude that he presents no viable claim that the personal benefit challenge was unavailable to his counsel on appeal.

*4* *No "Prejudice"*

Nor has Gupta shown prejudice—i.e., that the personal benefit instructions he challenges were so flawed as to deny him due process. First of all, we assess the targeted portion of the district court's instructions in context. "As [the Supreme Court] ha[s] often emphasized: '[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Frady*, 456 U.S. at 169 (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973)). Although Gupta argues that it was error for the trial judge to indicate that it would suffice to establish a personal benefit if Gupta's purpose had been simply "'maintaining a good relationship'" (Gupta brief on appeal at 10 (quoting Tr. 3371)), the court's actual relationship language (included in Gupta's quote but omitted from his argument) was "maintaining a good relationship *with a frequent business partner*" (Tr. 3371 (emphasis added)).

Second, the trial court's reference to a good relationship with a frequent business partner was consistent with the Supreme Court's discussion in *Dirks v. SEC*, 463 U.S. 646 (1983), as to what may properly be considered a tipper's anticipated personal benefit sufficient to warrant his conviction of insider trading. In *Dirks*, noting that "a purpose of the securities laws was to eliminate use of inside information for personal advantage," *id.* at 662 (internal quotation marks omitted), the Court stated that the test for whether that purpose has been contravened is "whether the insider receives a direct or indirect personal benefit from the disclosure, such as a pecuniary gain or a reputational benefit that will translate into future earnings." *Id.* at 663. The Court also stated that an inference of such a benefit may be warranted by the circumstance of "a relationship between the insider and the recipient that suggests a *quid pro quo* from the latter, or an intention to benefit the particular recipient." *Id.* at 664. Where the recipient of the tip is the tipper's "frequent" "business" partner, the tipper's anticipation of a *quid pro quo* is easily inferable.

Third, the *Dirks* Court's use of the above disjunctives (*i.e.*, "such as a pecuniary gain or a reputational benefit that will translate into future earnings," *id.* at 663, and "a *quid pro quo* from the [recipient] or an intention to benefit the particular recipient," *id.* at 664)—especially prefaced by "such as"—suggests varying sets of

11

circumstances each of which would warrant a finding of the tipper's illegal purpose.

Thus, while Gupta argues that the instruction at his trial was "invalid" under *Newman* for stating that "'the benefit does not need to be financial or to be tangible'" (Gupta brief on appeal at 10), that instruction was warranted by *Dirks*. Indeed, the lack of need for proof of the tipper's financial or tangible gain was highlighted as well by the *Dirks* Court's illustration that

> [t]he elements of fiduciary duty and exploitation of nonpublic information also exist when an insider makes a gift of confidential information to a trading relative or friend. The tip and trade resemble trading by the insider himself followed by a gift of the profits to the recipient.

463 U.S. at 664; *see also United States v. Martoma*, 894 F.3d 64, 75 (2d Cir. 2018) ("The tipper's intention to benefit the tippee proves a breach of fiduciary duty because it demonstrates that the tipper improperly used inside information for personal ends and thus lacked a legitimate corporate purpose.").

Finally, the trial court's instruction that the benefit to Gupta need not have been financial or tangible, although contrary to the formulation given in *Newman*, could not have constituted prejudice to Gupta because it was correct. The *Newman* formulation was expressly rejected by the Supreme Court in *Salman v. United States*, 137 S. Ct. 420 (2016), as that Court noted that

12

[t]o the extent the Second Circuit held that the tipper must also receive something of a "pecuniary or similarly valuable nature" in exchange for a gift to family or friends, *Newman*, 773 F.3d, at 452, . . . this requirement is inconsistent with *Dirks*.

137 S. Ct. at 428. Thus, in the wake of *Salman*, we have stated that "it is settled  law that personal benefits may be indirect and intangible and need not be pecuniary  at all." *United States v. Martoma*, 894 F.3d at 75.

The fact that *Newman's* requirement for proof of a tipper's pecuniary or other tangible gain has been rejected by the Supreme Court disposes of Gupta's contention—invoking *Montgomery v. Louisiana*, 136 S. Ct. 718, a case that involved principles of retroactivity and that did not address issues of cause and prejudice—that *Newman* meant the trial court's instruction that proof of pecuniary or tangible benefit was not necessary caused him to be convicted of a crime for "conduct that is not criminal" (Gupta brief on appeal at 22).

*No Innocence*

Lastly, as to the claim of actual innocence, Gupta has not "demonstrate[d] that, '*in light of all the evidence*,' 'it is more likely than not that no reasonable juror would have convicted him,'" *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S.

13

at 327-28 (emphasis ours)), of insider trading.  As a matter of background, the record as a whole, viewed in the light most favorable to the government, contained ample evidence that Gupta and Rajaratnam were business associates. Gupta had invested several million dollars in Galleon funds.  In 2005, Gupta and Rajaratnam invested in another investment fund capitalized with $50 million; Gupta originally contributed $5 million; he later doubled his investment with $5 million loaned to him by Rajaratnam.  In early 2008, Gupta was made chairman of Galleon International, which, as of April 2008, managed assets totaling some $1.1 billion and could earn performance fees; Gupta was given a 15 percent ownership stake in that fund.  Gupta also regularly worked on Galleon's behalf in seeking potential investors; he had a keycard allowing him access to Galleon's New York offices. *See Gupta I*, 747 F.3d at 116-21. Gupta described Rajaratnam as a very close friend. Rajaratnam's address book noted Gupta as a good friend; and Gupta was one of five persons whose call Rajaratnam's secretary was authorized to put through if he called near the end of the trading day. *See id.* at 121.

The jury was instructed that in order to convict Gupta on any given count, it must find, *inter alia*, that "Gupta anticipated that Mr. Rajaratnam or others at Galleon would trade on the basis of th[e non-public] information" provided by

14

Gupta, that "they then did so by buying or selling the shares specified in the count on the basis of the inside information," and that "Gupta, in return for providing this information, anticipated receiving some personal benefit." (Tr. 3371.) There was ample evidence to permit the jury to find that Gupta intended Rajaratnam to trade on the basis of the confidential information Gupta passed to him and that Gupta personally benefitted in one of the ways envisioned in *Dirks*.

For example, on September 23, 2008, Gupta, a member of the board of directors of The Goldman Sachs Group, Inc. ("Goldman Sachs" or "Goldman"), participated in a Goldman board meeting via telephone and learned that Warren Buffett was about to invest $5 billion in Goldman, which would be publicly announced at 6 p.m. that day. At 3:54 p.m.—one minute after the end of that board-meeting telephone call—Gupta called Rajaratnam, telling Rajaratnam's secretary that the call was urgent. Gupta and Rajaratnam spoke briefly, and Rajaratnam then immediately began having his people at Galleon buy Goldman shares. Between 3:56 p.m. and the 4:00 p.m. close of the market, they bought Goldman shares costing a total of more than $33 million. The next morning, the price of the stock rose some seven percent. *See Gupta I*, 747 F.3d at 117-19. The timing of Gupta's call to Rajaratnam immediately after the end of his board call, and his statement at 3:54 p.m

15

that he needed to speak to Rajaratnam urgently, plainly allowed the inference that Gupta intended Rajaratnam to buy, and profit on, Goldman shares in advance of the Buffett $5 billion announcement at 6 p.m.

Similarly, on October 23, 2008, Gupta learned in a Goldman Sachs board-of-directors conference call that Goldman would report in December a quarterly financial loss. The loss would be its first in its history as a public company, and market analysts were predicting another profitable quarter. One minute after the end of that board conference call, Gupta called Rajaratnam. The next morning, one minute after the stock market opened, Rajaratnam began selling Goldman shares. In little over an hour, Rajaratnam sold enough shares to avoid a loss of more than $3.8 million. Rajaratnam also advised a portfolio manager of Galleon International—which had in the past invested in Goldman stock, and in which Gupta had a 15 percent ownership stake—that on the previous day Rajaratnam had received confidential information from a Goldman board member, negative news that would not be reported publicly until December. Rajaratnam said he himself would make short sales of Goldman stock. *See Gupta I*, 747 F.3d at 118-21. On this evidence and the record as a whole, the jury could rationally have found that Gupta anticipated that Rajaratnam would engage in trading of Goldman shares that would benefit

16

Gupta financially.

## Conclusion

We have considered all of Gupta's arguments on this appeal and have found them to be without merit. The judgment of the district court is affirmed.